|  |  |
| --- | --- |
| 10 | 271 |
| 114 | 574 |

## SOENS et al. *vs.* CITY OF RACINE.

### APPEAL FROM CIRCUIT COURT, RACINE COUNTY.

Heard October 7, 1859.]                    [Decided January 4, 1860.

*Assessments—Taxes—Jury—Commission—Agent—Public Improvement—Municipal Corporation.*

The cases of *Lumsden vs. City of Milwaukee*, 8 Wis., 485, and *Weeks vs. City of Milwaukee, supra,* 242, considered and approved, in relation to assessments by municipal corporations.

Where the charter of the city of Racine provided, among other things, that the city council should have power to make piers, breakwaters, &c., for securing the lake shore within the city limits, to let the contract for their building to the lowest bidders, to levy a tax to pay for the same upon the wards or lots, which a jury of six, selected by the council, should determine, according to the benefit received: Held, that such proceeding was not a jury trial, but a special proceeding in the nature of a commission for a public purpose; and the voice of a majority would prevail in making the assessment.

Where there is a delegation of a power for a private purpose, all must concur in the act to be done to make it valid, unless otherwise provided by the parties delegating the power; but where the power is intrusted for a public purpose a majority will govern, and their act is the act of the whole.

The charter of the city of Racine provided that the council should not levy a tax to exceed $5,000 a year for current expenses, without a petition signed by fifty tax payers; nor without a vote of the tax payers, before making the levy: Held, that this provision did not apply to an assessment to make piers and breakwaters to protect the lake shore of the city.

Assessments upon certain lots for the purpose of constructing piers, &c., is not an appropriation of private property for public use, &c., it is merely the exercise of the taxing power for the public benefit.

The legislature are not authorized to levy a tax for merely private or individual ends. The authority delegated to the legislature, and by them transferred to the municipal corporation, is to be exercised only for some object of public or common interest.

Though private property may be directly or indirectly protected, or private interests promoted by a given improvement, it furnishes no rule for deciding that the improvement is not public.

To determine whether a matter is of public or merely private concern, it is necessary to consider, not whether the interest of some individual will be promoted; but whether the whole, or the greater part of the community will be so.

This action was commenced by Peter Soens and others, against the city of Racine, to obtain a perpetual injunction restraining the city of Racine from collecting a special tax levied upon the lands of the respondents to pay a part of the expense of building certain piers, breakwaters, and protections, for the purpose of securing the lake shore in the second ward of the city from the encroachment of the waters of Lake Michigan.

The case was heard at the December special term of the court, 1857, upon bill and answer, and the following facts are admitted by the pleadings, and were also admitted by the parties on the hearing:

1. That in the year 1856, the city council of the city of Racine, caused to be constructed certain piers, breakwaters, and protections, for the purpose aforesaid, in the second ward, the whole expense of which was about $8,000; that the plan of the same was submitted to the city council, in writing, and a careful estimate of the cost thereof made, before such improvement was authorized by the city council; and after the same was so authorized by the council, the building thereof was let by contract to the lowest bidder, after giving the notice of such letting required by sec. 9, of chap. 134, of Session Laws of 1852.

2. That as soon as the contract was let, the city council selected a jury of six freeholders in the manner and having the qualifications required by sec. 10, of chap. 134, above mentioned, to make the assessment required; that the jury, in discharge of that duty, assessed $2,000 of the cost of such improvement upon the second ward at large, and the balance of such cost they assessed upon a large number of lots in the ward, upon the lands required by sec. 10, a part of which are the lots of the complainants as set forth in the bill, and that all of the jurors acted in making such assessment.

3. That the jury made their return of such assessment to the city council as required by sec. 10; which return was signed by but five of the jurors. The assessment was approved by the city council, and was added to the taxes levied upon the ward, and upon the lots respectively, in the next annual tax list upon the ward, as required by sec. 11.

4. That before the improvement was authorized a petition for the same, signed by more than twenty freeholders of the second ward, was duly presented to the city council, but no election was ever held in the city, or in any ward thereof, for

the purpose of voting upon the question of making such improvement.

The circuit judge, after argument and deliberation, gave the following opinion and decision in writing:

The bill in this cause is filed to restrain the collection of a tax in the second ward of the city of Racine, and remove the cloud created thereby upon the title of lands owned by the complainants in that ward. By agreement of parties, all questions as to the nonjoinder or misjoinder of complainants are to be overlooked and disregarded by the court, liberty being given to the complainants to amend their bill in that respect, as they shall be advised, so as to enable the court to pass upon the merits. The power of the court to interfere by its writ of injunction and restrain the collection of a tax has been questioned, and, without doubt, upon grounds of public policy should be seldom exercised.

This power, however, has been exercised in some instances, and in the case of *Carpenter vs. Walker*, not reported, our supreme court have distinctly sanctioned its exercise in those cases where an illegal tax is attempted to be enforced against real estate, thus creating a cloud upon the title.

By section 11, of the act amending the city charter, passed in 1852, it is provided that whenever the assessment shall be completed and filed with the city treasurer, the same shall become a lien upon the lots, assessed from the time of such filing. The assessment in this case therefore, became a lien upon the complainants' lots from the time of its filing with the city treasurer, and at the time of the filing of their bill, was a cloud upon their respective titles, the lien to be enforced only against the property, and not collectable by distress and sale of goods and chattles.

The special tax in question was levied for the purpose of constructing piers and breakwaters, for the protection of the shores of Lake Michigan, against the encroachments of the lake, under the provisions of the act above referred to, which points out the manner in which the assessment shall be made, and the tax levied to pay for such improvements.

The common council, in this case, attempted to pursue the course pointed out in the act, for the construction of these improvements, and the assessment and levy of the tax in question, and, on the whole, I am inclined to regard their action as a substantial compliance with the law. It is true

that the question was not submitted to the tax payers of the ward, but this being a special assessment for this particular improvement, I am of opinion that it is not a tax for city or ward purposes, within the meaning of section 3 of the amendment of 1852. I can discover no constitutional objection to the number of jurors who made the assessment, or to the fact that but five of these acted in the premises. This was not a proceeding according to the course of the common law, nor one where the parties were entitled to the verdict of a common law jury, under the provisions of our constitution. And were this a case of an ordinary assessment for street improvement, upon the adjoining lots, under the provisions of section 33 of the charter, I should be disposed to uphold the power, although it has been sometimes seriously questioned. *The People vs. Mayor of Brooklyn*, 6 Barber, 209; also 9 Barber, 536.

In this case, however, the tax is levied for the protection of private property, and for an object in which the public have really no interest. It is, in fact, saying to a man, that he shall contribute a certain sum towards an improvement upon his own property for his own benefit, and that his neighbors shall pay the balance *nolens volens*. This certainly cannot be regarded as a proper exercise of the taxing power, for it is unequal, and upon what principle it can be justified I am unable to conceive. Constitutions certainly are of little use if they will not protect us against such an exercise of the taxing power. I am of the opinion that the levy of this tax was an act unauthorized, unconstitutional, and void, and I direct a decree for a perpetual injunction against its collection.

                    J. M. KEEP, Circuit Judge.
Dated June 10, 1858.

A decree or judgment was thereupon entered for a perpetual injunction, in accordance with the opinion. From which the defendant appeals to the supreme court.

*W. P. Lyon*, for the appellant.

*Paine & Millett*, for the respondents.


*By the Court*, DIXON, C. J. The point principally relied upon in argument by the respondent's counsel to sustain the

judgment of the circuit court, namely, that the assessments complained of violate the first section of the seventh article of the constitution, has been already disposed of by the decision in the cases of *Lumsden vs. The City of Milwaukee*, 8 Wis., 485; and *Weeks vs. The City of Milwaukee et al.*, made at the present term of this court, *supra*, 242. The remaining points will be disposed of in the order in which they are made by the respondent's counsel.

1. It is said that the report of the *five* jurors was illegal and did not authorize the city counsel to make the assessment. The 9th section of chap. 134, Laws of 1852, entitled "an act to amend an act to incorporate the city of Racine, &c., provided among other things, "that the city council should have power to authorize the construction of suitable piers, break waters, and such other protections as might be planned or devised for the purpose of securing the lake shore within the bounds of said city, from the encroachments of the waters of lake Michigan, and to levy a tax in the manner thereinafter specified, upon the lots and ward or wards benefitted or rendered more valuable thereby;" but that no such improvement should be authorized by the city counsel until a plan of the same should have been submitted in writing, and a careful estimate of the cost made; and that the same when authorized, should be let to the lowest bidder or bidders, reasonable notice having been first given of the time and place of receiving bids, and that the contract price should be the maximum to be raised, as thereinafter provided for. By the 10th section it was provided "that as soon as the contract price of any such improvement should be ascertained, the council should select a jury of six freeholders in like manner as they were then selected, to appraise the damage on opening streets, and in no way interested in said improvements, or the lots and ward or wards benefitted thereby, whose duty it should be faithfully and impartially to assess the costs of said im-

Soens et al. vs. City of Racine.

provements upon the lots and ward or wards benefitted either immediately or in prospect, assessing such proportion upon the ward or wards as shall be just and equitable, and the remainder upon the lots benefitted thereby, having proper reference to the present protections and situation of said lots, and the amount of benefit each received therefrom ; and that such jury should make return to the city council in like manner as was then provided for making returns for appraisal of opening streets."

It is apparent from these provisions, that the proceeding was in no respect like a common law trial by jury. The return was unlike a verdict. . It was a special proceeding in the nature of a commission, and the persons empowered to execute it, though called *jurors*, were really, by the nature of the duties imposed, *commissioners*.

By the agreed case it appears that all the requirements of these two sections were complied with by the city council up to and including the selection of the jury, and that the jurors *all acted* in discharge of the duties imposed upon them, and performed every thing required, except that the return of the assessment was signed by only *five* instead of the whole number of jurors. It is a rule of law too well settled to admit of doubt or dispute, that where there is a delegation of power for *a purpose merely private*, that all the persons to whom the execution of such power is committed, must concur in the act to be done, to make such execution valid and effectnal, unless it is otherwise provided by the parties. Such is the case with arbitrators, trustees, &c., appointed by the act of the parties interested. On the other hand, it is equally well settled, that where the powers entrusted are matters of *public concern*, then the voice of the majority shall govern, and their act is the act of the whole. Co. Lit., 181; *Grindley vs. Barker*, 1 Bos. & Pul., 236 ; *Green vs. Miller*, 6 J. R., 39; *Young vs. Buckingham*, 6 Ohio, 485.

In *Gridley vs. Barker*, Eyre, C. J., says : " It is now pretty well established that where a number of persons are entrusted with power, *not of mere private confidence*, but in some respects of a general nature, and all of them are regularly assembled, the majority will conclude the minority, and their act will be the act of the whole." Our statutes, of 1849, chap. 4, subdivision 3 of sec. 1, seemed to go further and make the execution of a majority, when acting alone in cases where a *joint authority is given to three or more officers or other persons*, legal and binding, unless it shall be otherwise expressly declared in the law giving the authority.

2. The second point made is, that the assessment is void because the question of incurring the liability was not submitted to the voters of the city pursuant to the 4th section of the act above referred to. To make this objection intelligible, it is necessary to state briefly the provisions of the three preceding sections. The first section provided that the mayor and city council should not levy a tax on the city in any one year, for current city expenses, exceeding five thousand dollars. The second section, that the mayor and council should levy a tax in addition to the current city expenses, sufficient to pay the then indebtedness of the city, as the same should become due and payable, and also a tax on the several wards sufficient to pay their respective indebtedness. The third, that there should be no other tax levied upon said city, or the several wards thereof, for city or ward purposes, except the poll tax, unless specially authorized by a vote of the property tax payers, as thereinafter provided. The fourth section provided that, on the written petition of fifty freeholders of the city, asking for an appropriation, stating the amount, for any specified object, not coming within the current, ordinary expenses of the city, it should be the duty of the mayor and council to call a special election of the property tax payers of the city, to vote upon such appropriation; and

if a majority of those voting on said question, should vote in favor of it, the city council should make the appropriation and levy the tax to pay it, but the money should be appropriated to no other purpose except that specified in the original petition of the freeholders; that no more than one such proposition should be submitted at any one election, and that any surplus money remaining over and above completing said specified object, should be carried to the credit of the fund for current city expenses, and should lessen the amount to be raised for that purpose in the next ensuing year to an amount equal to said surplus.

The case shows that before the city council authorized the erection of the piers, breakwater and protections described in the complaint, a petition therefor was signed by fifty freeholders, and presented to the council, but that no vote of the property tax payers was taken. We are of opinion that the making and presentation of the petition was wholly uncalled for, and that the provisions of section four were entirely inapplicable to such a proceeding. It is very evident, from the tenor of sections three and four, that their provisions are applicable to proceedings for levying taxes, above the sum of five thousand dollars, specified in the first section, for general city and ward purposes, and not to special assessments authorized by the 9th and 10 sections. Such general purposes would include the erection of public buildings for the accommodation of the inhabitants, such as a city hall, and market houses for the sale of provisions, the providing of the city with the necessary and usual implements for the extinguishment of fire, and other kindred objects, of general importance and necessity to the public. This is manifest from the last clause of the fourth section, which provides that after the specific object of these appropriations is obtained, the surplus, if any, should be carried to the credit of the fund for current city expenses, and lessen the amount of taxes to be raised for that

purpose the ensuing year. This provision, if held applicable to a proceeding like the present, would be obviously oppressive and unjust as to those persons whose property is assessed to pay for the improvements. This view is corroborated by the provisions of the 11th section, which declared that whenever the assessment provided for in the 9th and 10th sections should be completed and filed with the city treasurer, the same should become a lien upon the lots, from the time of filing the same, and directed the manner of collection. These three sections, taken together, seem to form a complete system of proceeding, in reference to the subjects to which they relate.

3. The only remaining point deemed necessary to be noticed is, that the assessment is void, " because it is the appropriation of private property for public or private use, without compensation." That such an assessment is not an appropriation of private property for public use, within the provisions of our constitution, we think too well settled by adjudications in other states, upon like provisions, to admit of discussion. It is an exercise of the taxing power, and not an appropriation of specific private property for public use. The printed brief seems to indicate a doubt in the mind of the counsel whether the object to be attained was of a public or private nature. On the argument it was insisted that it was purely a private enterprise. It was upon this ground that the circuit judge sustained the action, and directed a decree perpetually restraining the collection of the taxes. If this position is correct, the whole proceeding must fall. The legislature are not authorized to provide for the levying of taxes for merely private or individual ends. Such taxation would be entirely subversive of the objects of government, and ought not to be tolerated. Legislative authority is not delegated for any such purpose, and the taxing power can only be exercised for the accomplishment of some object of public or com-

mon interest. No authorities were cited to show that it was taxation for merely private purposes. If the legislature may by act authorize the common council of a city, at the public expense, to provide for the organization of fire departments, and supply them with proper engines and machinery, to prevent the destruction of buildings by fire, it is difficult to perceive why it may not, on the same principle, authorize the levy and collection of taxes, for the purpose of staying the destruction of the site of the city itself, when, from natural causes, such as a change in the current of a stream, or the action of the waters of a lake, it is in danger of being undermined or swept away. If the loss of buildings and perishable things be regarded as a public calamity, worthy and proper to be guarded against at the public expense, is not the loss of both buildings and the soil on which they stand, a greater calamity, and more worthy of public protection ? There is hardly a city in the state in which there are not fire departments organized and supported, to a greater or less extent, at the expense of the public; yet we never heard it objected that they are mere private enterprizes, not authorized by law. The circuit judge, in his opinion, says : " The tax is levied for the protection of private property, and for an object in which the public have really no interest." If this be so, does not the argument apply with much more force to all public and statutory regulations for preventing accidents and losses of the former character ? The objects of protection in that case are all private property. No city has perishable property of its own to warrant these expenditures. Many have none. The object is to defend and save private property. In the present case, however, in addition to the private injuries to be prevented, the public had a direct interest in the preservation of its streets and grounds. That private property may be either directly or indirectly protected, or private interests promoted by a given improvement, furnishes

no sound rule for deciding that it is not public. Public and individual interests are often so intimately connected and blended together, that it is impossible to advance the one without at the same time advancing the other. There is no public good without at the same time a private benefit. They are inseperable; the former cannot exist without the latter. If the latter be not promoted, it proves that it is not a public good. That which affects the interests of an entire community must, to a greater or less degree, affect the interests of each member of it. To determine whether a matter is of public or merely private concern, we have not to determine whether or not the interests of some individuals will be directly promoted, but whether those of the whole or the greater part of the community will be so. That such was the character of the improvements provided for by the act, there can be little doubt. The entire city was interested in staying the further progress of destruction caused by the action of the waters of the lake.

The judgment of the circuit court must be reversed, and the cause remanded for further proceedings, in accordance with this opinion.