BRYANT and others, Appellants, vs. ROBBINS and another, Respondents.

*November 23 — December 13, 1887.*

*Constitutional law: Drainage laws: Uniformity of town and county government: Police power: Delegation of power of taxation: Assessment of benefits: Municipal corporations.*

1. The drainage of swamps and marshes is not one of the ordinary functions of town or county officers; and ch. 442, Laws of 1885, providing a special system for the drainage and reclamation of lands in Dane county and for the appointment of commissioners for that purpose, is not in violation of sec. 23, art. IV, Const., requiring uniformity in town and county government.

2. Ch. 442, Laws of 1885, provides that before the appointment of the drainage commissioners therein mentioned the circuit court shall determine and adjudicate whether the proposed system of drainage is one of public utility beyond any resulting damage to individuals, whether the public health is likely to be improved thereby, whether any highways or public streets of a town or city will be benefited thereby, whether such proposed system is of such paramount public benefit as to warrant the proceedings, and whether the costs, damages, and expenses will be less than the benefits which will result to the owners of the lands likely to be benefited thereby. The commissioners, if appointed, are to determine and report what lands will be benefited and what damaged, and to assess the benefits or damages upon the several tracts affected, and if any particular part of the work should be assessed upon any particular tracts, or upon any town or municipality, they shall so report; "and if any town, or municipality, or corporation, should in their judgment bear a part of the expense, or as such derive a public benefit from the whole or any part of such proposed work, they shall so report and assess the amount of such benefits." All assessments by the commissioners are subject to review by the court, with a trial by jury. *Held:*

   (1) The act is a valid exercise of the police power.

   (2) It does not delegate to the court the power of taxation or of making assessments.

   (3) It does not authorize any debt for the work to be charged upon .a municipality not receiving a benefit therefrom.

APPEAL from the Circuit Court for *Dane* County.

The case is stated in the opinion. The petitioners appealed from the order sustaining the demurrer and dismissing the petition.

For the appellants there were briefs by *Luse & Wait* and *Rogers & Hall,* and oral argument by *Mr. Luse* and *Mr. Hall.* They argued, among other things, that the drainage laws being founded upon the general police powers of the state, the duties imposed thereby upon county or town officers are public rather than corporate duties, and such laws are not a part of the system of town or county government. *Hayes v. Oshkosh,* 33 Wis. 314; *Wallace v. Menasha,* 48 id. 85; *Schultz v. Milwaukee,* 49 id. 254; *Little v. Madison,* id. 605; *New York & B. S. & L. Co. v. Brooklyn,* 71 N. Y. 580; *Dawson v. Aurelius,* 49 Mich. 479. See, also, *Single v. Marathon Co.* 38 Wis. 363; *Milwaukee Co. v. Pabst,* 45 id. 314. The legislature may require municipal corporations to make improvements for the public good and bear the expense thereof. *Bissel v. Jeffersonville,* 24 How. 294; Cooley on Taxation (2d ed.), 684; *Wilcox v. Deer Lodge Co.* 2 Mont. 574; *Jensen v. Polk Co.* 47 Wis. 298; *Mills v. Charlton,* 29 id. 416; *People v. Flagg,* 46 N. Y. 401; *Comm'rs v. Detroit,* 28 Mich. 229; 1 Dillon on Mun. Corp. (3d ed.), sec. 73; *Mobile Co. v. Kimball,* 102 U. S. 703; *Hagar v. Reclamation District,* 111 id. 701.

For the respondents there was a brief by *Pinney & Sanborn,* and oral argument by *Mr. Pinney.* They contended, *inter alia,* that ch. 442, Laws of 1885, is an infringement of that provision of the constitution which declares that the rule of taxation shall be uniform. It is an attempt to delegate the power of taxation, as against the city of Madison, to commissioners, when by the constitutional and statutory rule and method of taxation all such powers are lodged in the regularly constituted public officers of the city. It is an attempt to confer the power of taxation upon the circuit

court through the commissioners. The power of taxation is not a judicial function. *Heine v. Levee Comm'rs,* 19 Wall. 655. The act is void as an attempt to confer upon the court the power of making assessments, which is in no proper sense a judicial power, but is a power distinguishable from that of general taxation. *Weeks v. Milwaukee,* 10 Wis. 242. The police power is a governmental power, and when its exercise is lodged in town officers it pertains to the system of town government; and when lodged in county authorities it pertains to the system of county government. General systems of town and county drainage, adequate to accomplish all that is sought to be accomplished by this act, have been prescribed by statute to be executed by town and county officers. This act is therefore in violation of the constitutional provision that " the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable." Const. art. IV, sec. 23; R. S. secs. 1359–1379, 669, subd. 11; *State ex rel. Peck v. Riordan,* 24 Wis. 484; *State ex rel. Keenan v. Milwaukee Co.* 25 id. 339; *State ex rel. Walsh v. Dousman,* 28 id. 541; *State ex rel. McCurdy v. Tappan,* 29 id. 664; *State ex rel. Grundt v. Abert,* 32 id. 403; *McRae v. Hogan,* 39 id. 529; *State ex rel. La Valle v. Sauk Co.* 62 id. 376. The act is void, also, so far as it attempts to *compel* the city of Madison to contribute to and become a party to a local improvement. *Comm'rs v. Detroit,* 28 Mich. 229; *Hubbard v. Springwells,* 25 id. 153; *Philadelphia v. Fox,* 64 Pa. St. 180. It is an unconstitutional delegation of the power of taxation. Cooley on Taxation, 33, 34, 48–51; *People ex rel. Dunham v. Morgan,* 90 Ill. 558; *Hardenburg v. Kidd,* 10 Cal. 402; *Waterhouse v. Public Schools,* 9 Baxter, 398; *Harward v. St. Clair & M. L. D. Co.* 51 Ill. 130. So far as the act professes to authorize the imposition of a general charge upon the city of Madison, to be paid out of its property both real and personal, it is simply an attempt to exercise the power

of general taxation for the private benefit of the owners of the lands to be reclaimed. What it contains looking toward the exercise of the police power is a mere subterfuge. *State ex rel. Kean v. Driggs Drainage Co.* 45 N. J. Law, 91; *State v. Newark*, 27 id. 185.

COLE, C. J. This is a proceeding instituted under ch. 442, Laws of 1885, which provides a system for the drainage and reclamation of lands in Dane county. A petition was presented to the circuit court of the county, signed on behalf of the common council of the city of Madison, *George E. Bryant*, and more than forty other persons, who represent that they are owners of wet and overflowed lands in the county, and setting forth the matters required by the law to be stated in the petition, and asking that a board of commissioners be appointed for the purposes prescribed. A demurrer was interposed to this petition by the owners of the mill dam and water power at the outlet of Lake Mendota, on the ground that the law in question was unconstitutional and void; which demurrer was sustained, and the petition dismissed.

The only question which we have to consider on this appeal is whether the law is in conflict with the provisions of our constitution. It is said the learned circuit court held that the law violated sec. 23, art. IV, which declares that the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable. Ch. 54, R. S. 1878, provides for a system of drainage which is to be carried out or executed by town and county officers, and it is insisted that ch. 442, Laws of 1885, vests the powers as to drainage in a different body, over which neither the town nor county authorities have any control. This, it is said, is a plain departure from the system of town and county government which prevails elsewhere in the state. It may admit of doubt, as argued by

the counsel of the appellants, whether the power to construct drains, etc., given to town and county officers under the general law, is, strictly speaking, a part of the system of government belonging to those political corporations within the meaning of the constitution. It is rather a special authority conferred for a special purpose, calculated to promote the public health and welfare. The powers and duties of county and town officers are those which they ordinarily and usually exercise as a part of the regular and permanent administration of the town and county governments. It is a significant fact in this discussion that no drainage law was enacted for several years after the adoption of the constitution, nor was any such power as is now conferred given to town and county officers to execute such work. There is therefore strong reason for saying that the power to construct drains is in no proper sense a part of the usual powers belonging to town and county governments, but is a special authority given for a particular purpose, and which may be conferred upon any persons or body upon which the legislature may see fit to confer it. In *Sheboygan Co. v. Parker*, 3 Wall. 93, a kindred objection was considered in regard to the authority of commissioners appointed by the legislature to subscribe to the stock of a railroad and bind the county by their acts. It was contended that no persons but county officers could exercise such a corporate duty and create a debt against the county. But the objection was overruled; the court holding that a county officer was understood to be one by whom the county performs its usual political functions or offices of government, and that it did not include persons appointed to perform the special duty in question.

We do not think ch. 442 comes within the decisions in *State ex rel. Peck v. Riordan*, 24 Wis. 484; *State ex rel. Keenan v. Milwaukee Co.* 25 Wis. 339; *State ex rel. Walsh v. Dousman*, 28 Wis. 541; *McRae v. Hogan*, 39 Wis. 529;

*State ex rel. La Valle v. Sauk Co.* 62 Wis. 376. In the last
case, the act considered relieved all towns in the state out-
side of Grant county from the expense of erecting and
maintaining the bridges therein specified, and cast the bur-
den of doing so upon the respective counties, while each
town in Grant county was compelled to erect and maintain
any such bridge within its limits at its own expense. Im-
posing taxes for the erection of bridges is one of the usual
powers and duties of the constituted authorities of towns or
counties, and ever has been; and it was essential that there
should be no discrimination on that subject, but that the
act should be uniform in its application. If we are right in
supposing that the drainage of swamps and marshes is not
the ordinary duty or function of a town or county officer,
then the last decision obviously does not apply to the case.

The law under consideration confers enlarged powers for
drainage, and brings the whole subject under the control
and supervision of a different tribunal than the one pro-
vided in the general law. It certainly seems to furnish all
necessary restrictions to guard against abuse and oppres-
sion in its administration, as an examination of its provis-
ions will show. The petition must be signed by twenty-five
or more owners of wet or overflowed lands in the county,
who are of the opinion that such lands will be benefited by
the proposed system of drainage, subject to the assessment
provided; and who shall also be of the opinion that the
public health and welfare will be promoted thereby; and
who desire to institute the proceeding for the drainage and
reclamation of their land, "either by constructing, extend-
ing, opening, enlarging, widening, straightening, or deep-
ening watercourses, or removing natural or artificial
obstructions therefrom, or by permanently lowering the
ordinary level of the water in any or all of the six lakes"
mentioned. The petition must "specify, in general terms,
the nature of the improvement desired to be made;" give

a "description of the lands to be benefited thereby; state the benefits to the public health or convenience, and to private property, which it is believed will result from such system of drainage, and that such system is practicable." The petition must further specify "the stream, lakes, or watercourses proposed to be dredged, widened, deepened, straightened, or altered in course, and the lakes to be lowered, and to what extent, and the principal obstruction to be removed; . . . and that, in the belief of the petitioners, the costs, damages, and expenses will be less than the benefits which will result to the owners of the lands likely to be benefited thereby. If any town or city as a whole will be benefited by such system of drainage, the petition may so state, setting forth the nature of such benefits." The common council of the city of Madison is authorized to join in said petition in behalf of said city, and any town board may join which has thereto first been duly authorized so to do by a vote of the town. The petition may also inform the court of any other matters relevant or pertinent to the matter. It is to be verified and filed with the clerk for the action of the circuit court or presiding judge thereof, asking for the appointment of five commissioners, "to be known as the 'Dane County Drainage. Commissioners.'"

The filing of the petition shall be deemed the commencement of an action in said court, affecting all lands or other property that may be benefited or damaged or interfered with or taken for public use by virtue of the act. Upon such filing, the court or judge makes an order prescribing the notice to be given to all parties interested of the hearing of the petition; and, upon proof being made of the giving of the required notice, any persons whose estates or interests are to be affected by the proceeding may show cause against the prayer of the petition. The court or judge hears the parties interested, and "determines and ad-

judicates whether the system of drainage proposed by said petition is one of public utility beyond any damage to individuals to result therefrom, and whether the public health is likely to be improved thereby, whether any highways or public streets of a town or city will be benefited, and whether such proposed system is of such paramount public benefit as to warrant the proceeding authorized in such case by the act, and whether the costs, damages, and expenses will be less than the benefits which will result to the owners of the lands likely to be benefited."

If no sufficient cause is shown against granting the prayer of the petition, and if it shall be made to appear that such proposed system of drainage will not permanently reduce the main level of the waters of Lake Monona below a point therein named, the court or judge, if he deem proper, may make an order appointing five disinterested and competent freeholders as commissioners to act in the premises as directed by the act. The commissioners take and subscribe an oath of office; thereupon the court orders them to take into consideration the petition; and it is their duty then "to make personal inspection of all lands, streams, drains, lakes, or ponds affected by such petition, and, if the expenses of a survey be first guaranteed to them, to cause a survey to be made to determine the feasibility of the proposed work, and the best manner of doing it, and the lands to be benefited or damaged thereby; and the commissioners shall report whether, in their judgment, any and what drainage, opening, deepening, widening, straightening, altering, or extending of drains, streams, lakes, or watercourses is necessary, practicable, and of public utility and benefit in excess of any damage to the public or individuals which may thereby be caused, and fully report in what such benefit consists. If they report in favor of such work, they shall determine and further report the best and cheapest method of accomplishing it, its

character, accurately describing the same, and what dams or other obstructions, natural or artificial, it may be necessary to remove or destroy, whether the same are lawfully maintained or otherwise, and whether the course of any natural stream should be altered, and how much such proposed work will reduce the height of the water in Lake Monona below a level which is named, if any.    They shall also determine and report what lands will be benefited by the whole or any and what part of the proposed system of drainage, and what lands or property will be damaged thereby, and shall assess the benefits or damages upon each tract or easement or interest, by whomsoever held. If any particular part of the work to be done should be assessed upon any particular tracts, or upon any town or municipality, the commissioners shall so report; and whether, in their judgment, such town or municipality should bear a part of such expense, or would as such derive a public benefit from the whole or any part of such proposed work, and shall assess the amount of such benefits.

Upon the filing of this report, the court causes notices to be given to persons mentioned in the report as owners of land or other property affected or charged by assessments in such report, with the amount thereof, and after a specified time the court hears any remonstrances or objections which may be made to the report, or that any lands are assessed too high or too low or improperly, or that lands are assessed which ought not to be, or that lands should be assessed which are not, or, by any person to whom damages are assessed, that they are inadequate, or, by any person or municipality, that the public will not be benefited by the work proposed, or that the surface of the water of Lake Monona will be reduced by such drainage to a point below the level fixed by the act.

At the time fixed for the hearing of the objections, the court, on the demand of any person assessed for benefits or

awarded damages, may frame an issue, and submit the matter to a jury for trial, whether the amount of damages will be a just compensation therefor, and whether the assessment of benefits as made by the report to any remonstrant demanding the review by a jury is too high, and the jury may assess the same. If the court or presiding judge find, upon the hearing, that the report requires modification, the same may be referred to the commissioners to be modified in any respect. If the finding of the court or presiding judge is in favor of the validity of the proceedings, the court, after the report shall have been modified to conform to the findings, or if there be no remonstrance, shall confirm the same, and the order of confirmation shall be final and conclusive, and the proposed work be established and authorized, and the proposed assessment approved, subject to the right of appeal to the supreme court as in ordinary actions. If lands not described in the original petition are included in the report or assessments or awards of damages made thereon, the court or judge shall order the owners to be notified thereof, and allow the owner to be heard as a remonstrant, as therein provided. "If, however, a majority of the owners of the land to be charged with the expense of the proposed improvement shall join in a remonstrance in opposition to the system of drainage described in the report of the commissioners, the court shall thereupon dismiss said proceeding, and the original petitioners shall pay the costs of the clerk of court."

The court directs the manner of doing the work, the commissioners having power to divide it into parts, and to receive proposals for the performance of the whole or any part of the work. Plans and specifications for the work are to be prepared under the direction of the commissioners, and are to be kept, subject to inspection by all persons interested, at some place in the city of Madison to be designated by the court. After the confirmation of the report

and the assessment for benefits, any party interested may pay his assessment to the commissioners; and all assessments so made which shall not be paid shall be certified to the town or city clerk as properly due and payable for such improvements, either in whole or in part; and such clerk shall thereupon enter upon the tax lists which shall next thereafter be made such assessment so certified, to be collected as state and county or town taxes are collected, excepting the personal property of individuals shall not be liable for such assessment for improvement on lands. The commissioners are authorized to bring a suit in the name of the county for their use as such commissioners, in any court having jurisdiction, to. collect such assessment from any corporation refusing to pay the same, and the judgment in such action may be enforced as in other actions.

By the seventh section it is provided, if the commissioners, in their preliminary examination therein provided for, shall find it necessary to condemn, remove, or reduce any dam lawfully maintained, or impair any easement or right of flowage or other right, they may negotiate with the owner for the amount to be paid for such purpose, and report such agreement with their report. If they cannot so agree, they shall make their award of damages therefor as therein provided. Upon the confirmation of the report, and in the prosecution of the work, it is provided that no dam shall be removed or reduced, or private property invaded or taken, until the damages agreed upon, awarded, or finally adjudged for such taking, removal, or destruction shall have been deposited with the clerk of the court for the benefit of the owner or persons entitled thereto.

These are the main provisions of the act which it is necessary to notice. It will be seen that the law vests large discretion and power in the circuit court, or presiding judge thereof, over the proposed system of drainage. The court determines whether it will be one of public utility beyond

any damage which will result from its execution to individuals; whether the public health is likely to be improved, or streets or highways benefited; and whether the system is of such paramount public benefit as to justify the work. While the public health and general welfare are prominent objects to be promoted by the drainage, still the law goes upon the principle that the property benefited shall mainly bear the expense of the improvement. In other words, charges are apportioned on the lands according to benefits received. The law evidently contemplates that no system of drainage shall be authorized unless it is feasible, and where the costs, damages, and expenses shall not be less than the benefits which shall result to the owners of the lands reclaimed. In that respect the law goes upon a principle similar to one which imposes special and local burdens upon property for local improvements. In *Donnelly v. Decker*, 58 Wis. 461, the validity of the general drainage law received careful consideration, and was very fully discussed by Mr. Justice ORTON. The majority of the court rested the authority to enact such a law upon the police power to protect the public health and welfare.

Courts have generally sustained such laws upon some ground, and the law in question may well stand upon the police power. An owner upon whose land an assessment is made has the right and opportunity to contest its fairness and justice in a court where a jury trial can be had before the assessment is confirmed; and when it is confirmed by the circuit court he has the right to appeal the case to this court as in ordinary actions. Further, to guard against all oppression, the law provides, if a majority of the owners of the land to be charged with the expense of the proposed work join in a remonstrance in opposition to the system of drainage described in the petition and report of commissioners, the court shall dismiss the proceeding. This feature was commented on by the learned counsel for the respond-

ents as affording proof that it was not the public health and general welfare which were intended to be promoted by the enactment, but some "swamp-land speculation to be advanced and carried out at the expense of the city of Madison." We can make no such inference from the law, nor do we feel justified in imputing to the legislature an object not indicated by it. The legislature might well hesitate to authorize the execution of such a system of drainage against the wishes and at the expense of the owners of the overflowed lands, though satisfied it would promote the public good. Another feature of the law not found in the general drainage act is the one requiring compensation to be made for any dam reduced or removed, or for private property invaded, before the removal or taking of such property.

A number of objections were taken to the law by the learned counsel for the respondents. He insists that the act attempts to confer upon the court the power of making assessments, which, he says, is not a judicial power. The court does determine whether the proposed work should be undertaken, which, in view of the matters pertaining to that question, would seem to call for the exercise of a judicial function. Such judicial determination is the foundation of the assessment collected by the taxing officers when not paid. But we cannot see wherein the power exercised differs from that exercised by the court when it stays proceedings in an action to avoid a tax until there is a reassessment of such tax. In the latter case, there has been no question as to the right of the court to act. It cannot fairly be claimed in this case that the court directly exercises the power of taxation. It is true, it may initiate a proceeding which will result in local charges or assessments upon land; but this it does in many cases, as where it sustains street improvements or works for the improvement of harbors and public waters. See *Soens v. Racine,* 10 Wis.

271; *Bond v. Kenosha*, 17 Wis. 284; and cases cited by the chief justice in *Johnson v. Milwaukee*, 40 Wis. 315. In the *Soens Case*, the assessment upon lots for the improvement of the harbor was made by commissioners appointed by the common council under the charter, and the assessment was sustained. It may be conceded that the laying of taxes is properly the exercise of a legislative, as distinguished from a judicial, function. Still it is obvious that whenever the court sustains a law authorizing a work the expense of which is charged against property specially benefited, it exercises the same power or function which the court does in authorizing the drainage proceeding under the law in question. "Whenever a local improvement is authorized, it is for the legislature to prescribe the way in which the means to meet its cost shall be raised,— whether by general taxation or by laying the burden upon the district specially benefited by the expenditure. This is a matter purely of legislative discretion." FIELD, J., in *Hagar v. Reclamation Dist. No. 108*, 111 U. S. 701. In the present case, the commissioners make the assessment upon the land specially benefited by the drainage, and to the extent of such benefits. We can perceive no valid objection to the agency by which the assessments are made, or to the principle upon which they are laid. *Wurts v. Hoagland*, 114 U. S. 606.

The same counsel further objects to the law because the city of Madison, as a municipality, is liable to be charged with a debt for the work when it may not in any way receive any benefit from it. We do not so understand the law. The law authorizes charging a city or town with a part of the expense when such city or town derives a public benefit from the whole or any part of the work. Where the streets or highways of a city or town are particularly benefited by the improvement, there is surely no injustice in charging such city or town with an amount equal to such benefit. The city or town can appear and contest the

justness and fairness of the assessment or charge made against it, and have a jury trial of that issue. There is no reason to suppose that a city or town will be oppressed by the execution of the law, or that it will be charged in any instance with a greater share of the expense than it ought to bear. In this case, the common council have joined in the petition, so, if the proceedings should ultimately result in imposing a debt upon the city, the debt will be one voluntarily incurred. But we do not think there is any ground for saying that the law authorizes the imposition of a general charge upon any city or town for an improvement from which it in no manner derives any benefit. As we have said, the law plainly makes the land which is benefited by the drainage the principal source from which the means to do the work are derived; and wherever a city or town, as a corporation, is likewise benefited, there is no injustice in charging it to the extent of the benefits received.

These remarks dispose of the material objections taken to the law. We are of the opinion that it is a valid act, and that the demurrer to the petition should have been overruled.

*By the Court.*— The order sustaining the demurrer is reversed, and the cause remanded for further proceedings.