IN RE DOOR CREEK DRAINAGE DISTRICT.

*September 22—October 19, 1920.*

*Drains: Benefit accruing to trunk-line highways: Assessment against county: Validity: Enforcement.*

1. A county charged with the obligation to maintain trunk highways may be benefited by the drainage of the lands upon which such highways are located, and under sec. 1379—10*b*, Stats. 1919, are subject to the same burdens respecting contributions to pay the cost of establishing a drainage system as are cities, towns, and villages.
2. While a tax is not enforceable as a debt unless provided by the legislature, an order assessing benefits, made in statutory proceedings to establish a drainage district, is the culmination of a judicial proceeding; and an order made assessing benefits against a county may be enforced by any and all processes inherent in courts of justice.
3. In view of the statutes making counties liable for damages caused by defects in trunk-line highways and for the cost of their maintenance in excess of refunds from the state, an assessment of benefits for a drainage system inures to the advantage of the county.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

This order, with a slight modification, confirms the final report of the commissioners of the *Door Creek Drainage District* fixing the drainage assessment against *Dane County* for benefits to state trunk highway No. 12.

A petition for the formation of a drainage district to be known as the *Door Creek Drainage District* was filed in the circuit court for Dane county on March 10, 1913. The final report of this commission was filed November 5, 1919, assessing benefits as follows: 105 rods state trunk highway No. 12—assessment of benefits, $2,100; assessment of cost of construction, $1,071.

On December 31, 1919, an order was entered by the court confirming the report of the commissioners, and on March 5, 1920, an order was entered by said court per-

mitting *Dane County* to file its remonstrances against the assessments. A hearing was had before the court without a jury. The court decided that the drainage to be given by the respondent district would result in a saving of $2,100 in the maintenance of the 105 rods of trunk highway No. 12 located within the district, and that by reason of the fact that under the Wisconsin statutes *Dane County* is liable for the maintenance of the portion of the highway thus benefited, such saving would inure to the benefit of *Dane County*. An order was entered assessing *Dane County* this sum as a benefit, from which order the county appeals.

For the appellant there was a brief by *Roman Heilman,* attorney, and *John J. Blaine,* attorney general, *E. E. Brossard,* assistant attorney general, and *Emerson Ela,* of counsel, all of Madison; and the cause was argued orally by *Mr. Heilman* and *Mr. Brossard.*

For the respondent there was a brief by *J. M. Clancey* of Stoughton and *Buell & Lucas* of Madison, and oral argument by *Frank W. Lucas.*

SIEBECKER, C. J. It is argued that no power had been conferred upon the drainage district by the legislature to make this assessment against the county. The appeal comes up on the record without a bill of exceptions and presents for consideration legal questions arising upon the following facts found by the court: That the part of trunk highway No. 12 here involved has been legally built; that it is within the *Door Creek Drainage District;* that the county is obligated to maintain this part of the trunk highway in the manner provided by the statutes; that all of the land on which this trunk highway is located was separately assessed to the owners for benefits to the full amount by which the value of the land is increased by the proposed drainage for agricultural purposes; that the assessment here attacked is in addition to such assessment for agricultural benefits to the land; and that the proposed drainage will benefit *Dane*

*County* in its maintenance of this part of trunk highway No. 12 lying within the drainage district. The statutes providing for acceptance of federal aid for the construction and maintenance of a system of improved highways throughout the state are in conformity with the requirements of the federal act and make the system of state highways thus established a state highway system under the direct control of the state highway commission. By statute, maintenance of this highway system lying within each county of the state is imposed on the several counties "in accordance with the directions, specifications, and regulations made for such maintenance by the commission" (sub. 1 (a), sec. 1317, Stats.), and the cost of such maintenance, plus an allowance for use of county machinery, is to be paid into the county treasury out of the state trunk highway appropriation, which consists of all moneys paid into the state treasury by the United States under the federal act, by the several counties for highway purposes, and all sums set aside by the state for the purpose of the net proceeds of automobile licenses. It is apparent from the various provisions of these statutes providing for the construction, improvement, and maintenance of this highway system called the "State Trunk System" that such highways are state highways, and that the counties charged with their construction and maintenance have no rights of ownership to the easement, and that the state employs the counties of the state as its agents to establish and maintain them. The provisions of sec. 1317, Stats., charging counties with maintenance of this highway system, in no way affect or conflict with the provisions of the federal aid act, and hence the state policy of charging the county with this duty must be accepted as proper by the state in carrying out its governmental function. The question then arises, Can a county be deemed to have been benefited by the drainage of lands on which such trunk highways are located, in the light of the obligations so imposed on counties to maintain them? The trial court was persuaded that the evidence

shows that the top grade of the highway in question averages not to exceed two feet above the level of the adjoining marsh, upon which water stands for a considerable period of each year, and that drainage such as is here proposed by the drainage district will reduce the cost of maintenance of the road. This conclusion seems self-evident and must be recognized as a matter of common knowledge in road building. It is apparent that the legislature purposed by the amendment of sub. 5, sec. 1379—18, Stats. 1917, as provided in sec. 1379—10*b*, Stats. 1919, by including "counties" in the definition of "corporation," that counties were to be subjected to the same burdens and duties respecting contributions to pay the cost of establishing a drainage system as are cities, towns, and villages. The trial court clearly expressed the evident legislative object in holding that

"The drainage statute discloses a clear intent to render all corporations, including counties, subject to assessment for benefits conferred by drainage. Such assessment is against the corporation as distinguished from an assessment against land. The mere fact that the statutes prescribe no method by which such assessment is to be collected does not negative the intent to permit the assessment of benefits against counties."

The right to assess benefits against corporations as such for benefits incident to drainage is recognized in the case of *Bryant v. Robbins,* 70 Wis. 258, 35 N. W. 545. It was declared respecting such a charge under the drainage statutes there involved:

"The law authorizes charging a city or town with a part of the expense when such city or town derives a public benefit from the whole or any part of the work. Where the streets or highways of a city or town are particularly benefited by the improvement, there is surely no injustice in charging such city or town with an amount equal to such benefit."

The drainage statute prescribes no method that shall be followed in collecting such an assessment under the drainage

statute. It is urged that this condition of the statute indicates that the legislature did not intend to make the county liable for an assessment of such benefits because the road or easement cannot be subjected to such a tax nor sold to satisfy it, as is the case in other assessments under the drainage statutes. While a tax is not enforceable by judicial proceeding as a debt unless it is so provided by the legislature, it does not necessarily follow that this makes the assessment under the drainage statute unenforceable as a demand against the county. It was observed in the case of *Stone v. Little Yellow D. Dist.* 118 Wis. 388, 95 N. W. 405, that the statutory proceeding for establishing a drainage district and making an assessment of benefits under the statute by an order or decree based upon the facts presented to the court and rendered in the light of the law as the court declares it, "is the culmination of an entirely judicial proceeding," and "that, as a corollary thereof, it may be enforced by the court rendering it by any or all of those processes inherent in courts of justice." And that it "is a judicial one has the support of intimations at least from this court and from the courts of Illinois, whence in very large measure the statutes were adopted" (citing). We perceive no grounds why the court's decree in drainage assessments is not a final determination of the questions presented as above suggested in the *Bryant Case,* nor do we discover any obstacle in the law for its enforcement as a demand against the county. We think the trial court correctly held that

"In the absence of express legislative provision, this obligation of the county will be enforced as other obligations against the county are enforced. The statute does not attempt to give the power to enforce the assessment of benefits by sale of any portion of the trunk-line highway."

As above indicated, the statute imposes on counties the duty of maintaining the trunk-line highways of the state, makes them liable for damages caused by their defective and insufficient condition, and provides for repayment of the

cost incurred by the counties for maintenance by the state, which is dependent on the amount available out of the state highway funds. Such refund to counties is fixed in amount by statute. Should the costs of maintenance exceed such amount of refund, then the county must pay the excess out of its treasury, as it is required to pay the damages caused through its default in keeping the highway in a state of sufficiency out of its treasury. It thus appears that counties are liable for damages caused by defects due to its defaults and for costs of maintenance in excess of refund from the state under the duty imposed on them to maintain these highways, and that such liabilities are not, in the proper sense, liabilities of the state in carrying out the governmental function of establishing this public highway system. It is plain that the assessment of benefits here involved inures to the advantage of the county incident to the obligation imposed upon it to build and maintain this highway. We think it clear, in the light of the statutes charging the county with the maintenance of this highway regardless of being completely reimbursed by the state for the cost thereof, that the drainage district has the power to assess the county for the amount it is benefited in maintaining this highway by the draining of the soil on which it is built as a result of maintaining this drainage system.

*By the Court.*—The order is affirmed.