THE PEOPLE *ex rel.* etc.

*v.*

DRAINAGE COMRS. DISTRICT No. 1 OF TOWN OF YOUNG AMERICA.

*Filed at Springfield November 2, 1892.*

1. DRAINAGE—*jurisdiction of commissioners to annex land to district.* The jurisdiction of drainage commissioners, under the Farm Drainage act, to annex outside lands to their district, is conferred by the fact that the owners thereof have connected the drains and ditches on such lands with the ditches of the district. That fact existing, the parties so connecting are to be deemed as having voluntarily applied to be included in the district, and in such case the commissioners are required to treat, classify and tax their lands as other lands of the district.

2. The statute is broad enough, and was intended, to include all individual land owners who may connect with the drains of a farm drainage district, even though their lands may be in an adjoining township. The highway commissioners, in such case, do not act as such, but as drainage commissioners. It is not requisite that the political subdivision in which they are elected shall be coincident with the boundaries of the drainage district.

3. SAME—*power of legislature to create and regulate drainage districts.* By the amendment of 1878 of the constitution (art. 4, sec. 31,) there is granted to the legislature full and unlimited power to authorize the formation of drainage districts, and such general grant carried with it, by necessary implication, all other powers necessary to make the grant effective. There is, therefore, no limitation upon the legislature as to the mode of forming such districts, or as to the agencies to be employed in their creation.

4. SAME — *commissioners of highways act as drainage commissioners.* Where highway commissioners, by virtue of their holding that office, exercise the special and added authority of drainage commissioners, they do not do so, in contemplation of law, as highway commissioners, but as a body of men to whom is delegated the power and authority of commissioners of the drainage district organized by and under the statute. Their duties as drainage commissioners are separate and distinct from their duties as commissioners of highways.

5. SAME—*farm drainage district in each township.* The statute seems to contemplate that separate drainage districts may be formed in each township. But when a drainage district is organized, and the owners of land not in such district voluntarily connect with the drains of the

27—143 ILL.

district, the statute contemplates that their lands, so far as benefited, shall be included in the district, to the end that they be required to bear their just proportion of the cost of drainage, irrespective of whether the lands lie within the township in which the district was originally organized, or in some other town or county of the State.

6. The power of the legislature to change and authorize the alteration of the boundaries of drainage districts, and extend the authority of the commissioners of the district, co-extensive with the district as changed, can not be questioned.

7. SAME—*power to change boundaries of district.* The right of the drainage commissioners to make an order changing the boundaries of the district so as to include additional lands, and their right to classify and assess them, is conclusively conferred by the fact of the connection of such lands with the ditches of the district by the land owners, which the statute makes a voluntary consent to be annexed to the district and have their lands assessed.

APPEAL from the Circuit Court of Edgar county; the Hon. FERDINAND BOOKWALTER, Judge, presiding.

Mr. H. VAN SELLAR, and Mr. H. S. TANNER, for the appellant.                                                  o

Mr. JAMES A. EADS, and Messrs. ECKHART & MOORE, for the appellees.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

Information in the nature of *quo warranto* was filed by the State's attorney of Edgar county, on the relation of owners of land in the town of Shiloh, in that county, against the drainage commissioners of drainage district No. 1, in the town of Young America, also in said county, to enquire by what authority of law they were, as such drainage commissioners, exercising the taxing power over lands of relators lying in the town of Shiloh. Upon hearing, the circuit court rendered judgment adversely to relators, and against them for costs, and they appeal.

The drainage district of which respondents are commissioners was organized in 1879, the area of land included therein

lying wholly within the town of Young America. It appears that shortly thereafter a main open ditch was constructed, from a point about fifty feet north of the south line of the township, near the center line of section 32, thence northerly and westerly through the district, and extending westwardly about a mile beyond the west line of the township, to an outlet. The town of Shiloh lies south of and adjoining the town of Young America, and sections 2, 3, 4, 9, 10 and 11, in the town of Shiloh, in which relators' lands are situated, form part of a water-shed, from which the water naturally flowed north, through the natural depressions, upon lands in the town of Young America, and thence north and westerly through that township. In a state of nature the lands of the district, as well as those of relators, were flat and wet, and inadequately drained by the sloughs; which had their source upon and south of relators' lands, and extended, as before stated, through the district.

Between A. D. 1881 and 1889 relators constructed upon their lands open ditches and tile drains, connecting directly, or through other ditches made or enlarged by them, with the main ditch of district No. 1, in the town of Young America, as the same had been constructed by its commissioners. We do not understand the fact of connection of the drains and ditches of relators with the ditches of the district to be controverted, but if it was, there is ample to show such connection. As early as 1881 the main ditch in the town of Shiloh, was opened down to the road, running on the line between the towns, and the water passed through a culvert into the ditch of the district, and the next year men were employed and the ditch cut across the road and into the district ditch, and relators' ditches and tiles, then or thereafter made, connected through said ditch so cut through the road, with the main district ditch.

Counsel for relators state the points relied upon for reversal to be: First, the drainage commissioners of drainage dis-

trict No. 1, in the town of Young America, can not extend the
boundaries of said district, and include the lands of the relat-
ors which lie wholly without the town of Young America and
wholly within the town of Shiloh; and second, the drainage
commissioners could not, by their order, without notice to re-
lators, extend the boundaries of the district and include their
lands, but that, as to such extension and inclusion, relators
were entitled to notice, and to be heard.    An order was duly
made and filed by the commissioners finding that relators,
severally, had connected with the drains of the district, and
annexing and classifying their lands, with others, August 31,
1889.

The fact that relators had connected the drains and ditches
upon their land with the ditches of the district, lay at the
foundation of the right of the commissioners to make such
order including their lands within the district.    But that juris-
dictional fact existing, relators were, by the statute, to be
deemed as having voluntarily applied to be included in the
district, and the commissioners, in such case, are required to
treat, classify and tax their lands as other lands of the district.
(Rev. Stat. chap. 42, sec. 42.)    But the point made is, that
district No. 1, in the town of Young America, having been or-
ganized within that town only, and the highway commissioners
of that town being *ex officio* its commissioners, they can not
exercise jurisdiction over lands lying outside of the town in
which the district is organized, and in and for which they were
elected highway commissioners.    It is to be observed that the
statute is broad enough, and was intended, as we think, to in-
clude all individual land owners who should connect with the
drains of the district.    The highway commissioners, in respect
of the drainage district, do not act as highway commissioners,
—in which capacity their jurisdiction would necessarily be
confined to the township,—but as drainage commissioners;
and it is not, as seems to be supposed, requisite that the polit-
ical subdivision in which they are elected should be coincident

with the boundaries of the drainage district in which they ex-
ercise the functions of drainage commissioners.

In view of the construction given the provisions of the con-
stitution prior to the amendment of 1878, it became necessary
to invest the legislature with power to authorize the formation
of drainage districts with power of special assessment of prop-
erty benefitted, and the people, by the amendment adopted in
1878, (art. 4, sec. 31,) granted such power, without limitation
as to the mode of its exercise. Such general grant carried
with it, by necessary implication, all other powers necessary
to make the grant effective. (*Kilgour* v. *Drainage Comrs.* 111
Ill. 342.) There is no limitation upon the legislature as to
the mode of forming drainage districts, or as to the agencies to
be employed in their creation. (*Huston* v. *Clark,* 112 Ill. 344;
*Owners of Land* v. *People,* 113 id. 296; *Village of Hyde Park*
v. *Spencer,* 118 id. 446.) Thus the legislature may give the
county court power to form the districts, or vest the power in
the highway commissioners of the town, or in persons selected
from two boards of highway commissioners, (as in the case of
the formation of union districts,) or county commissioners of
the county, or corporate authorities of towns, cities and vil-
lages, (*Blake* v. *People,* 109 Ill. 504, and cases *supra,*) or the
legislature may create another corporation within either, and
define its powers, and determine the agencies through and by
which its powers may be exercised. (*Wilson* v. *Board of Trus-
tees,* 133 Ill. 443.) The mode and agencies through and by
which the special assessment is to be imposed is left wholly
to legislative discretion, and when it has chosen and desig-
nated the agency its selection is conclusive. When the high-
way commissioners, by virtue of their holding that office,
exercise the special and added authority of drainage com-
missioners, they do not do so, in contemplation of law, as
highway commissioners, but as a body of men to whom is
delegated the power and authority of commissioners of the
drainage districts organized by and under the statute. Their

power and duties as drainage commissioners are separate and distinct from their duties as highway commissioners, and are to be exercised independently of any duty imposed upon them as highway commissioners.

The legislature having provided for the formation of "union districts," where the land included in a single system of drainage lies in two towns, it would not seem proper, in the first instance, to include in districts of the class here organized, lands lying without the township of its organization. In such cases the law contemplates there may be a union of the lands to be benefited, into a district to be organized under the statute. But such provision is not mandatory, and the statute seems to contemplate that separate districts may be formed in each township, for it expressly provides that one district may use the drains of another upon payment being made of an amount equal to what it would have been assessed if originally included in the the districts with the ditches of which it connects. (Starr & Curtis, chap. 42, sec. 42.) When, however, a drainage district is organized, and individual owners voluntarily connect with the drains of the district, the statute clearly contemplates that their lands, so far as benefited, shall be included in the district, to the end that they be required to bear their just proportion of the cost of drainage, irrespective of whether the lands lie within the township in which the district was originally organized, or in some other town or county of the state. The power of the legislature to change and authorize the alteration of the boundaries of the *quasi* municipal corporations, and extend the authority of the commissioners of the district, co-extensive with the district as changed, can not be questioned. It is true, the commissioners are elected by the qualified voters of the township only, but by law are vested with power of drainage commissioners of the drainage district, as it may be organized and extended under the law. *Covington* v. *City of East St. Louis*, 78 Ill. 550; *Lang-*

*horn et al.* v. *Robinson,* 20 Gratt. 661 ; *Brooks et al.* v. *Mayor,* etc. 48 Md. 265 ; *Bryant* v. *Robinson,* 7 Wis. 258.

If assessments are imposed upon the lands of relators by persons in whose selection they can not participate, it is the result of their voluntary choice. By connecting with the drainage of the district, they are by the statute, to be deemed to have voluntarily applied to have their lands benefited, included in the district, and having availed of the drainage, the statute and justice alike demand that they bear a fair proportion of the burthen.    Undoubtedly, the lands in the town of Young America being servient, were bound to receive the water falling upon and flowing from the lands of relators, and it may be conceded that relators had the right to collect the water upon their lands in ditches and drains, and discharge the same, thus accumulated upon the servient lands, without at all affecting the question here involved.    Such would be the right in every instance, when the land of the individual owner who connects with the drain was higher than the district ditch; yet the statute is express that who so connects shall be deemed to have voluntarily applied to have his lands included.    When relators turned the water from their land into an artificial channel connecting with the district ditch, as before shown, they connected their drains and ditches with the ditch of the district, within the contemplation of the statute.

The second point made is equally untenable. By their voluntary act the relators had placed themselves where, by law, they were to be deemed as having voluntarily applied for inclusion of their lands in the district, and it only remained for the commissioners to treat, classify and tax their lands as other lands of the district.    By the act of connecting they had, in effect, annexed their lands, so far as benefited, to the district, and rendered them subject to classification and assessment as other lands of the district were liable.    The order changing the boundaries of the district being required, so that

the record and map required to be filed might show the lands included in the district, in no way affected the rights of the relators. If they had not connected with the drains of the district the order was nugatory; if they had, it was that fact which gave the commissioners power to classify and assess their lands. No appeal is allowed by the statute from the classification of the lands of the relators, or from the determination of the commissioners to classify them, and the right to classify and assess them being dependent, not upon any order of the commissioners, but upon the fact of connection with the ditches of the district, that fact was properly before the court upon *quo warranto*. That fact is jurisdictional, and without it exists, the proceedings of the commissioners in respect of classifying or assessing the land, are without authority of law. Relators had, in effect, voluntarily consented to the inclusion of their lands within the district, and all they could require was, that they should have proper notice of the classification of their lands, which was duly given, and of which no complaint is made.

The case of *Commissioners* v. *Griffin*, 134 Ill. 330, is not in conflict with the views here expressed. There a petition of a majority of the adult owners of an area of land proposed to be annexed to a drainage district was presented, and we held the same notice was required as in the formation of the district originally. This was, as we still think, entirely correct, but can have no application to the case at bar. There, manifestly, the land owners, whom it was sought to force into the district, had a right to be heard, and the commissioners might refuse or grant the prayer of the petition. Here relators, as already said, had voluntarily subjected their lands to classification and assessment as lands of the district.

Finding no error in the record the judgment is affirmed.

*Judgment affirmed.*