## DRAINAGE DISTRICT No. 3

*v.*

### THE PEOPLE *ex rel.* Z. Baron *et al.*

*Filed at Ottawa October 26, 1893.*

1. DRAINAGE LAW—*change from farm district to one under Levee act.* Where an election in a farm drainage district is duly called and held, to determine whether such district shall incorporate under the Drainage and Levee act, and returns are made to the county court, and the votes canvassed as required by law, a change of organization will be effected from the time of the filing and recording of the certificate of the county clerk, showing that a majority of the votes cast at such election were for a change of organization.

2. SAME—*appointment of commissioners on change of organization.* After such change of organization the commissioners of the district in office at the time of filing such certificate will continue in office and act for the district until their successors are appointed and qualified, and the county court can appoint such successors only on the first Monday in September after the organization under the Drainage and Levee act.

3. SAME—*connecting with the drains—adding new territory to district—notice.* Where the owners of land outside of a farm district connect with the drains of the district, they will be deemed to have applied to be included within the district, and their lands benefited by the drainage will be treated and classified and taxed like other lands of the district, without any notice of the action of the commissioners annexing their lands to such district.

APPEAL from the County Court of Iroquois county; the Hon. CHARLES R. STARR, Judge, presiding.

Mr. R. W. HILSCHER, for the appellant.

Per CURIAM: An information in the nature of *quo warranto* was filed in the Iroquois circuit court, against appellant, to inquire by what authority the drainage commissioners of the district exercised jurisdiction, etc., over lands of relators. The commissioners filed a plea justifying their action, etc., upon the ground that the district was organized under the Farm Drainage act, (Starr & Curtis, chap. 42,) and that the relators had connected ditches upon their land with the ditches of the district, and thereby had voluntarily applied to be connected, and the commissioners had platted and classified such lands, as they lawfully might do, etc. (Farm Drainage act, sec. 42; *People ex rel.* v. *Drainage Comrs.* 143 Ill. 417.) Demurrer was sustained to this plea, and judgment of ouster entered. The district appeals. A motion is now made by Stephen Bunker, Isaac Pilatte and William Baron, claiming to be commissioners of drainage district No. 3, in the town of Martinton, Iroquois county, Illinois, on behalf of appellant, to · dismiss the appeal. The motion is resisted by the highway commissioners of said town, and *ex officio* drainage commissioners of drainage districts organized under said act, who claim to be drainage commissioners of and acting for and on behalf of this district.

It appears that on the 18th day of October, A. D. 1892, an election was duly called and held in said district, in pursuance of section 65 of the Drainage and Levee act, (3 Starr & Curtis, chap. 42,) to vote for or against organization of the district under that act. A transcript of the proceedings, including the petition for and holding of the election, the return to and canvas by the county clerk of the votes cast, and his certificate of the result, and the filing thereof by the town clerk, and recording of the same in the records of the district, is filed upon

the motion. No objection to these proceedings is pointed out, and we have been unable to find any particular in which there has not been substantial compliance with the statute. The sixty-fifth section, after providing for the manner of calling and holding such election, and the return and canvass of the votes by the county clerk of the county in which the district is situated, provides that he shall cause a statement of the result of such election to be entered of record, and if a majority of the votes are for organization under the Drainage and Levee act, he shall send a certified copy of such record to the town clerk or other officer having in custody the records of the drainage district, who shall file and record the same in the records of the district; and it is further provided, "such district shall, from henceforth, be deemed to be duly incorporated as a drainage district under this act." It seems clear that upon the filing and recording of such certificate of the result of said election by the town clerk, in the records of said district, October 24, 1892, the organization of the district was changed,—that it ceased to be a drainage district under the act known as the Farm Drainage act, and became an incorporation existing under and deriving its powers from the Drainage and Levee act. The section further provides, upon the change being effected, the officers of the district, as organized prior to the change, then in office, "shall continue as like officers of such district until their successors shall be appointed and qualified under the provisions of this act." The question is, therefore, whether there has been a legal appointment of successors of the drainage commissioners who were acting as such at the time of the change of organization.

On the 9th day of January, 1893, the organization of the district under the Drainage and Levee act having been effected, the county court appointed the persons making this motion commissioners of the district. No irregularity is pointed out in making such appointment, or subsequent qualification of the appointees, other than that the court was without power,

under the statute, to make the appointment until the first Monday in September following the change of organization. The highway commissioners of the township in which the district was situated, were, under the Farm Drainage act, *ex officio* drainage commissioners, and at the time of the change were acting as such officers, and, as seen, were, by the sixty-fifth section of the statute, continued as drainage commissioners until their successors were appointed under the Drainage and Levee act. The fifth and sixty-second sections of that act are the only sections making provisions for appointment of drainage commissioners by the county court under that act. By the fifth section, after providing that drainage districts may be organized upon petition to the county court, and prescribing the method of organization, it is provided that if the court shall find that the formation of the district is necessary, etc., it shall "appoint three competent persons as commissioners, each of whom shall hold his office until his successor is appointed as hereinafter provided." By turning to section 62 we find the further provision, that "on the first Monday of September, in each district heretofore organized under this act, and the first Monday in September after any district may hereafter be organized under this act, the county court shall appoint three commissioners for each district, one to serve one year, one two years and one for three years, *from the date of the first appointment under this section.*" It is then provided that one commissioner shall, yearly thereafter, on the first Monday in September, be appointed to serve for three years.

The legislature evidently intended to create uniformity of organization, and in the appointment and classification of commissioners of districts of this class throughout the State, and to provide for the control and management of the district, by temporary boards of commissioners, between the time of their first organization, as prescribed in section 5, and the time fixed by section 62, for the appointment of its permanent

officers. The first or temporary commissioners, appointed under section 5, are not classified, but *each* is to hold his office until his successor is appointed, "as hereafter provided,"— that is, until the appointment is made, under section 62, on the first Monday in September following the organization of the district. It is manifest that the term of appointment under section 5 will be for less than a year,—that is, from the organization of the district until the qualification of the successors in office appointed under section 62. If we now turn to section 65 we will see that the legislature had in contemplation the same temporary control of the district until the appointment of the permanent commissioners can be made under the act, and that provision is made therefor in cases of change of organization, as contemplated by that section. In districts originally organized under this act the district is formed by and under the order of the county court, and the appointment of commissioners, as provided by section 5, relates, in terms, only to districts thus formed. In districts changed from organization under the Farm Drainage act to incorporation under the Drainage and Levee act, the districts are to be deemed to be organized under the latter act from the filing and recording of the certificate of the county clerk showing that a majority of votes at the election, held in pursuance of the provisions of section 65, were for change of organization, etc., and thereafter it is provided, all work done or proceedings had in or by the district is required to be under and in conformity with the latter act. But, as we have seen, it is provided that the commissioners in office under the former act, at the time of the change, shall continue as like officers of the district until their successors are appointed under the Drainage and Levee act. There is no provision of that act for the appointment of such successors other than that contained in section 62, which requires the appointment to be made on the day named in the section.

We are of opinion that the highway commissioners of the township, being *ex officio*, not only *de facto* but *de jure*, drainage commissioners of the district at the time of the change of organization, continued to be such officers, with power to exercise all of the functions of that office, under the Drainage and Levee act, until the appointment of commissioners for the district, in conformity with section 62 of the act. If it be conceded that their authority to act can be questioned in this way, which it is unnecessary to determine, it does not appear from this record that their successors have been appointed in conformity with the statute, and their right to control the litigation of the district must be recognized. The statute continues them in office until their successors are appointed on the first Monday in September after the organization under the Drainage and Levee act. The court was empowered to proceed only at the time and in the manner prescribed by the statute. The motion will be overruled.

It remains to consider the errors assigned. The only objection to the plea, pointed out on demurrer, is, that it does not appear from said plea that the drainage commissioners ever gave relators the notice required by law of the annexation proceeding, and that it does not appear from said plea that any notice whatever was given of the proposed annexation of the lands of said relators to said drainage district.

We held in *The People ex rel.* v. *Drainage Commissioners,* 143 Ill. 417, that where, as alleged in the plea, the owners of land outside of the district connect with the drains of the district, they are, under section 42 of the Farm Drainage act, (3 Starr & Curtis' Stat. p. 456,) to be deemed to have applied to be included in the district, and their lands benefited by the drainage of the district are to be "treated, classified and taxed like other lands of the district," and that such land owners, having voluntarily applied to be admitted to the district, were not entitled to notice of the action of the commissioners annexing the lands to the district. That case is

controlling here, and it is apparent the court erred in sustaining the demurrer to the plea and in rendering judgment of ouster. The judgment of the circuit court is accordingly reversed and the cause remanded.

*Judgment reversed.*