CASE 97—PETITION ORDINARY—FEBRUARY 19.

# Duke, &c., v O'Bryan, &c.

APPEAL FROM DAVIESS CIRCUIT COURT.

1. REPEAL OF STATUTE BY IMPLICATION.—An act authorizing the counties of the Commonwealth to remove ponds, pools, swamp marshes, or reclaim swamp land that may cause sickness, the cost to be paid out of the county levy, or by taxation of the property of the county, is not inconsistent with and does not operate to repeal "an act to empower the county courts of this Commonwealth to authorize the drainage of land when the same shall be conducive to the public health, convenience and welfare of its inhabitants."

While the general purpose of the first-named act, so far as the public is concerned, is the same as that of the other, it is clearly intended to apply to cases where the provisions of the last-named act can not be made to apply, or at least not so appropriately.

2. DRAINAGE ACT—CONSTITUTIONAL LAW.—The drainage act (sections 2380-2412, Kentucky Statutes), in so far as it attempts to authorize drainage construction, because of private benefits solely, is violative of the spirit if not the letter of the constitution. The constitutional provision that private property shall not be taken for public use without just compensation is an implied prohibition of the taking of such property for private use, either with or without compensation. (Robinson, &c., v. Swope, &c., 12 Bush, 21.)

3.—SAME.—While the operation of the act is to be confined to limits within which a public purpose may be effected, and enforced then only as the power of eminent domain may be exercised to that end, yet the provisions of the act touching private benefits may be eliminated, and the law upheld as a perfect and consistent statute. And if the public purpose be kept in view, it is no objection to the validity and enforcement of the act that private interests are also subserved.

4. SAME.—The drainage of lands when conducive to the public health, and resulting necessarily in the public convenience and welfare, unquestionably comes within the range of legitimate legislative action, and may rightly call into exercise the right of eminent domain and the taxing power of the State. (Scuffletown Fence Co. v. McAllister, 12 Bush, 315.)

5. SAME.—A fair construction of the provision of the act that the viewers in locating the drain "shall estimate the damages, if any, that any person or persons will sustain by reason of the construction of such ditch, and assess such damages to the parties owning the lands benefitted in proportion as each tract of land is assessed for benefits," is that assessments in no event can go beyond the benefits, and must be "in proportion as each tract of land is assessed for benefits." And the word "damages" is sufficiently comprehensive to require an estimate of compensation for the land actually taken.

6. CONDEMNATION—OFF-SETTING BENEFITS AGAINST VALUE OF LAND. —While in condemnation proceedings for turnpikes and public roads, or even for streets where there is a special tax levied, there can be no such thing as setting off the benefits against the value of the lands actually taken, because in such case the property might be actually taken and the alleged tax on it defeated for various reasons, but, when the same tribunal makes the local assessment against the property, and at the same time fixes the compensation and damages, there is no reason why it may not adjust both sides of the account.

SWEENEY, ELLIS & SWEENEY FOR APPELLANTS.

1. The drainage act of July 10, 1893, was repealed by the act of March 19, 1894. And while this proceeding had been heard and determined in the county court before the repeal, it was appealed to the circuit court where it was tried *de novo*, after the repeal. No vested right having been acquired by the parties under the original act, the judgment of the court rendered after the repeal of the act, was void. (Cov. & Lex. R. Co. v. Kenton Co., 12 B. M., 144; Com. v. Jackson, 2 B. M., 402; Auding v. Levy, 57 Miss., 58; Allen v. Farrow, 2 Bailey (S. C.), 584.)

2. The drainage act is void because the subject of the act is not expressed in the title. The title limits the act to the drainage of land where the same shall be conducive to the public health, but the act goes further and undertakes to authorize the drainage of land when the same will be of public or private benefit or utility. (Lewis on Eminent Domain, sec. 206.)

3. No part of an act will be upheld where a part of it is unconstitutional, unless the part found to be valid forms a consecutive and complete law in itself. And if a private use is combined with a public use in such a way that the two can not be separated, the whole act is void. (Lewis on Eminent Domain, sec. 206.)

4. The taking of lands under the drainage act is not an exercise of

the right of eminent domain. The public is to acquire neither the use, occupation nor enjoyment of the land proposed to be taken. (Whiting v. Ry. Co., 9 Amer. Law Reg., 156; Lewis on Eminent Domain, sec. 165.)

5. This proceeding can not be upheld upon the idea that it is a legitimate exercise of the police power of the State. '(Donnelly v. Decker, 46 Amer. Rep., 637; Lewis on Eminent Domain, sec. 186, and authorities there cited.)

6. Property can not be taken for private use, either with or without compensation, against the will of the owner. (12 Bush, 21 and 315; 2 Met., 350; 87 Ky., 267.)

R. A. MILLER of counsel on same side.

HILL & HILL for appellees.

1. The drainage provided for in the act is conducive to the public health, and the land drained, by reason of its increased value, will produce much more revenue in taxes. Either of these is a public benefit for which the act may be upheld. (Cooley on Taxation, 2 ed., 617; Anderson v. Kerns Drainage Co., 14 Ind., 199; 32 Ind., 169; 4 Ore., 25; Coster v. Tidewater Co., 90 Amer. Dec., 634; 12 Bush, 314; 87 Ky., 421.)

2. If the assessments exceed the benefits derived, it would result in taking private property for public use without compensation; but in this act the benefits are preserved, and damages provided for in the event the assessments exceed the benefits.

3. Right of eminent domain may be properly exercised, and the taxing power invoked by the State to reclaim large bodies of wet, swampy lands, and make them fit for habitation, and revenue producing. (Tidewater Co. v. Coster, 90 Amer. Dec., 634; Anderson v. Kerns Drainage Co. 77 Amer. Dec., 63; Zigler v. Menges, 16 Amer. St. Rep., 360; 7 Ind., 576; 4 N. J., 419.)

4. Part of the act under consideration is certainly unconstitutional, but after eliminating that part, there still remains enough that is constitutional, to form a perfect act; and under such circumstances the whole will not be declared inoperative. (Fuqua v. Mullen, 13 Bush, 467; McNeil v. Com., 12 Bush, 727; Hoke v. Com., 79 Ky., 581.)

SWEENEY, ELLIS & SWEENEY in petition for rehearing.

1. There is no provision in the act, directly or indirectly, providing for compensation for the land actually taken in constructing the ditches. The damages referred to in the act relate exclusively to injuries sustained by the manner in which the ditch or drain may be run or constructed through the owner's land.

2. Damages can not be set-off against benefits. (City of Covington v. Worthington, 11 Ky. L. R., 143; Railway Co. v. Piel, 87 Ky., 273; Asher v. L. & N. R. Co., 87 Ky., 395.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

This appeal involves the validity and constitutionality of the drainage act of July 10, 1893. (Sections 2380-2412, Kentucky Statutes.)

The objections to the judgment below establishing the ditch are as follows:

1st. The act under which the proceeding was instituted was repealed before final judgment by the act of March 19, 1894.

2d. It is void because the subject of the act is not expressed in its title.

3d. Because the county court is only given authority to establish a drain or ditch when the public health or public welfare demands it, while in this proceeding the drain is sought to be established on account of the private benefit or utility to certain individuals.

4th. Because the rights of land owners are not properly guarded, section 6 permitting the taxation of persons over whose lands the drain is to run, not only for benefits to pay damages that may be assessed in favor of those over whose lands it runs, but likewise for those who are not benefited but injured.

5th. The act authorizes the taking of private property for a private purpose; also for a public purpose without compensation.

On the first proposition learned counsel content themselves with the assumption that the subsequent act repeals the former one, and direct their argument

solely to the effect of the repeal on pending litigation.
Without discussing this effect, it seems to us the assumption is unauthorized.   The acts are not inconsistent.   The title of the first act, and we shall presently
see its operation is to be confined to the subject embraced in the title, is as follows:   "An act to empower
the county courts of this Commonwealth to authorize
the drainage of land when the same shall be conducive
to the public health, convenience or welfare of its inhabitants."

Then follows some thirty odd sections, in which the
county judge is authorized, on the petition of land
owners affected by any proposed ditch, to construct the
same through his viewers and reviewers by local assessments on the lands affected thereby, laid in proportion to the special benefits derived from the improvement.

The prominent feature of the act is that the cost of
the construction, including damages to land owners
beyond benefits, is paid by local assessments on the
lands of those benefited.

The second act authorizes the several counties of
the Commonwealth to remove ponds, pools, swamp
marshes, or reclaim swamp land that may cause sickness, to be paid for out of the county levy, or by taxation of the taxable property in the county, etc.

The validity of the second act is not now in question,
and it is sufficient to say of it that while its general
purpose, so far as the public is concerned, is the same
as that of the first act, it is clearly intended to apply

to cases where the provisions of the first can not be made to apply, or at least not so appropriately.   Its provisions are not inconsistent with those of the first act, and it does not, therefore, operate as a repeal of that act.

As to the second contention it is true that the purpose of the act as expressed in its title is solely a public one, and that besides such purpose, the various county courts are authorized by the body of the act to construct drains, etc., when they are of private benefit or utility.

The first section illustrates this, viz:   "That the county judge of any county shall have power, at any regular session of the county court, when the same shall be conducive to the public health, convenience or welfare, or when the same will be of public or private benefit or utility, to cause to be constructed, as hereinafter provided, any ditch, drain or watercourse within said county."

It is manifest, however, that, without regard to the objection growing out of the want of a sufficiently comprehensive title, the act, in so far as it seems to authorize the construction of such an improvement because of private benefits solely, is violative of the spirit if not the letter of the constitution.

In Robinson, &c., v. Swope, &c., 12 Bush, 21, it was held that the provision of the constitution to the effect that private property should not be taken for public use without just compensation previously made was an implied prohibition of the taking of such property for private use either with or without compensation.

The operation of the act is, therefore, to be confined in any event to limits within which a 'public purpose may be effected, and enforced then only as the power of eminent domain may be exercised to that end.   At the threshold, however, we are met with the question whether or not the provisions of the act touching public and private benefits are so blended throughout the various sections as that the objectionable features can not be rejected without impairing the sense of what. remains.   A careful examination of the act convinces us that these objectionable features may be eliminated and the law be upheld as a perfect and consistent statute.   Indeed it will be found that reference to "private benefit or utility" is made in the act often because of what we have already designated as a prominent feature of the act, namely, the local assessment system, by means of which the cost of the work is to be met by those whose lands are especially benefitted.   The fact that private benefits result is that which authorizes the local assessment, and if the public purpose be kept in view it is no objection to the validity and enforcement of the act that private interests are also subserved.   The applicants in the present case have not expressed the purpose of their application in the objectionable language of the first section of the law, but have alleged the necessity for the drain to be "the public and private health, convenience and welfare" and "the public and private benefit and utility." This public necessity is kept in view throughout the whole of the tedious detail of the case.   This proceeding is, there-

fore, not to establish a ditch on account of private bene-
fits, and this disposes of counsel's third contention.

We have seen that even the public purpose sought
to be attained must come within these objects, held to
be attainable by the exercise of the right of eminent
domain. On this question, however, as well as that
with respect to special assessment, there are no diffi-
culties. The drainage of lands, when conducive to
the public health and resulting necessarily, it may be
said, in the public convenience and welfare, unques-
tionably comes within the range of legitimate legislat-
ive action, and may rightly call into exercise the right
of eminent domain and the taxing power of the State.

In Scuffletown Fence Co. v. McAllister, 12 Bush, 315,
this court said: "The drainage of marshes and ponds
for the promotion of the public health, the improve-
ment of streets and public highways, are held to be
within the legitimate exercise of the taxing power,"
and such is the settled law.

It is insisted, however, that as, under section 6 of the
act, the viewers in locating the drain "shall estimate
the damages, if any, that any person or persons will
sustain by reason of the construction of such ditch,
and assess such damages to the parties owning the
lands benefited in proportion as each tract of land is
assessed for benefits," therefore, the act fails to prop-
erly protect the land owner over whose land the drain
runs. We suppose this contention to mean that under
the act one who is benefitted may be taxed beyond
the value of benefits received to pay those who are in-

jured.   And if such is the necessary construction of
the act the objection is fatal.   Assessments must in
any event be restricted to the extent of the benefits
conferred.

It seems to us, however, that this restriction is pro-
vided for with sufficient certainty.   The amount of the
benefit is to be first ascertained, and assessments must
be "in proportion as each tract of land is assessed for
benefits."

We think a fair construction of the act is that assess-
ments in no event can go beyond the benefits, and this
meets the objection complained of.   The act does not
say that the damages shall be paid before entry, but
it provides the source from which the damages are to
be collected, and the rights of the owner in this behalf
are fully protected by well settled law.   The other con-
tentions of counsel are disposed of in what we have al-
ready said.

The proceedings seem to be regular in every material
respect, the verdict of the jury conforms to the views
we have expressed and the judgment directing the es-
tablishment of the drain under the order of the county
court is affirmed.

The court delivered the following response to the
petition for rehearing March 27, 1897:

As we have already indicated, the viewers are to
"estimate the damages, if any, that any person or per-
sons will sustain by reason of the construction of the
ditch," and we think the word "damages" sufficiently
comprehensive to require an estimate of compensation

for the land actually taken.   The use of the words "if any" does not militate against this, because in constructing a ditch land is not actually taken from every person who might be damaged thereby.   In condemnation proceedings for turnpikes and· public roads, or even for streets where there is a special tax levied, there can be no such thing as setting off the· benefits against the value of the lands actually taken (City of Covington v. Worthington, 88 Ky., 208), for in such case the property might be actually taken and the alleged tax on it defeated for various reasons; but, when the same tribunal, the viewers, reviewers and the jury and the courts make the local assessment against the property, and at the same time fix the compensation and damages, we can see no good reason why this tribunal may not finally adjust both sides of the account.