In re Dexter-Greenfield Drainage District, 21 N. M. 286.

[No. 1782, December 31, 1915.]
# In re DEXTER-GREENFIELD DRAINAGE DIST.

### SYLLABUS BY THE COURT.

1.   Section 82, c. 84, Laws 1912 (section 1958, Code 1915), construed, and limited, in its application to such persons as have been assessed for the cost of construction of works of a drainage district, and, as so construed, held not to be unconstitutional as violative of section 16 of article 4 of the Constitution, which prohibits the Legislature from embracing more than one subject in a bill.                      P. 293

2.   Chapter 84, Laws 1912 (sections 1877-1958, Code 1915), which provides for the organization of drainage districts through the courts, held not to be unconstitutional as violative of section 1 of article 3 of the Constitution, which provides that no officer charged with the exercise of powers properly belonging to one of the three departments of the state government shall exercise any of the powers properly belonging to either of the other departments, except as otherwise in the Constitution provided or permitted, the duties imposed by the act being held to be judicial in character, and not legislative or executive; nor unconstitutional as violative of section 5 of article 5 of the Constitution, which provides for the nomination, and by and with the consent of the Senate, the appointment by the Governor of all officers whose appointment or election is not otherwise provided for, the commissioners of drainage districts being held not to be of the class contemplated by the section; nor unconstitutional as conferring upon the courts the powers of taxation, the duty and power of approving and confirming assessments for benefits in drainage districts being held not to be the power of taxation.                      P. 295

3.   Said chapter held not to be violative of section 6 of article 11 of the Constitution, which provides that all domestic corporations shall be organized by and through the State Corporation Commission; drainage districts being held to be public corporations, and of a class not comprehended by the section of the Constitution.                      P. 303

In re Dexter-Greenfield Drainage District, 21 N. M. 286.

4. Said chapter held not to be violative of section 20 of article 2 of the Constitution, which prohibits the taking of private property for a public use without just compensation.

P. 305

5. Section 35 of chapter 84, Laws 1912 (Code 1915, § 1911), held to give the right of appeal to this court from the findings of the district court in regard to the required signatures of the petition for the organization of a drainage district within 30 days after the same are filed and, consequently, to cut off the right thereafter to question such findings; such findings being findings of fact upon which the court assumes to act.

P. 307

6. A question not presented to the trial court will not be considered here.

P. 313

Appeal from District Court, Chaves County; McClure, Judge.

Jacquez Michelet filed a remonstrance to the report of the commissioners of the Dexter-Greenfield Drainage District for assessments. The remonstrance was overruled, and he appeals. Affirmed.

JAMES M. DYE of Roswell and CLIFTON MATHEWS of Bisbee, Arizona, for appellant.

Chapter 84, L. 1912, contravenes sec. 16, art. 1, State Const., in that it embraces within itself two separate and distinct subjects.

Ballentyne v. Wickersham, 75 Ala. 533; Builders' & Painters' Supply Co. v. Lucas, 119 Ala. 209, 24 South. 416; Brown v. State, 79 Ga. 324, 4 S. E. 861; Western Union Telegraph Co. v. Cooledge, 86 Ga. 104, 12 S. E. 264; Christie v. Miller, 128 Ga. 412, 57 S. E. 697; Moore v. Bossier Parish Police Jury, 32 La. Ann. 1013; State

v. Ferguson, 104 La. 249, 28 South. 917; Board of County Commissioners v. Snow, 45 Kan. 332, 25 Pac. 903; Skinner v. Wilhelm, 63 Mich. 568, 30 N. W. 311; City of Grand Rapids v. Burlingame, 93 Mich. 469, 53 N. W. 620; Cote v. Village of Highland Park, 173 Mich. 201, 139 N. W. 69; Trumble v. Trumble, 37 Neb. 340, 55 N. W. 869; Coxe v. State, 144 N. Y. 396, 39 N. E. 400; People v. Howe, 177 N. Y. 499, 69 N. E. 1114, 66 L. R. A. 664; Acklen v. Thompson, 122 Tenn. 43, 126 S. W. 730.

Chapter 84, L. 1912, contravenes sec. 1, art. 3, State Const., in that it attempts to delegate legislative authority to judicial tribunals, as well as executive authority.

Tyson v. Washington County, 78 Neb. 211, 110 N. W. 634, 12 L. R. A. (N. S.) 350; Johannes v. Thayer County, 83 Neb. 689, 120 N. W. 176; Houseman v. Kent, 58 Mich. 364, 25 N. W. 369; State v. Simons, 32 Minn. 540, 21 N. W. 750; In re Village of Ridgfield Park, 54 N. J. L. (25 Vroom) 288, 23 Atl. 674; Territory v. Stewart, 1 Wash. 98, 23 Pac. 405; In re Village of North Milwaukee, 93 Wis. 616, 67 N. W. 1033; Glaspell v. City of Jamestown, 11 N. D. 86, 88 N. W. 1023; Forsyth v. City of Hammond, 71 Fed. 443, 18 C. C. A. 175; In re Brenke, 105 Minn. 84, 117 N. W. 157; Winkler v. City of Hastings, 85 Neb. 212, 122 N. W. 858; Beasley v. Ridout, 94 Md. 641, 52 Atl. 61; State v. Brill, 100 Minn. 499, 111 N. W. 294, 639; State v. Neble, 82 Neb. 267, 117 N. W. 723; In re County Commissioners, 22 Okla. 435, 98 Pac. 557; State v. Barker, 116 Iowa, 96, 89 N. W. 204, 57 L. R. A. 244, 93 Am. St. Rep. 222; Prince George's County Commissioners v. Mitchell, 97 Md. 330, 55 Atl. 672; Smith v. Strother, 68 Cal. 194, 8 Pac. 852; Stevens v. Truman, 127 Cal. 155, 59 Pac. 397; State v. Rogers, 71 Ohio St. 203, 73 N. E. 461; Schwarz v. Town of Dover, 68 N. J. L. 576, 53 Atl. 214; Fleming v. Dyer, 20 Ky. L. 689, 47 S. W. 444; Muhlenburg County v. Morehead, 20 Ky. L. 376, 46 S. W. 484; Fleming v. Trowsdale, 85 Fed. 189, 20 C. C. A. 106; Silven v. Board of Commissioners, 76 Kan., 687, 92 Pac. 604; Bradley v. City of New Haven, 73 Conn.

646, 48 Atl. 960; City of Baltimore v. Bonaparte, 93 Md.; 156, 48 Atl. 735; State v. Bound Brook, 66 N. J. L. 168,. 48 Atl. 1022; Appeal of Norwalk Street Ry. Co., 69 Conn. 576, 37 Atl. 1080, 39 L. R. A. 794; Appeal of Spencer, 78 Conn. 301, 61 Atl. 1010; Board of Supervisors v. Todd, 97 Md. 247, 54 Atl. 963, 62 L. R. A. 809, 99 Am. St. Rep. 438.; Moreau v. Board of Chosen Freeholders, 68 N. J. L. 480, 53 Atl. 208; City of Boston v. City of Chelsea, 212 Mass. 127, 98 N. E. 620.

The said chapter of the laws contravenes sec. 6, art. 9, State Const., by providing for creating of domestic corporations by district courts.

Commonwealth v. Manchester & R. Free Bridge Co., 109 Va. 499, 63 S. E. 1083.

The said laws contravene sec. 20, art. 2, State Const., by taking and damaging private property without providing any definite or certain fund out of which compensation shall be made.

Connecticut River R. Co. v. Franklin County Commissioners, 127 Mass. 50, 34 Am. Rep. 338; Tuttle v. Knox County, 89 Tenn. 157, 14 S. E. 486; Godfrey v. District Court, 44 Minn. 299, 46 N. W. 355.

Notwithstanding court had once determined jurisdictional question, appellant should have been permitted to show that court was without jurisdiction.

Sheldon v. Wabash R. Co., 105 Fed. 785; Brougham v. Oceanic Steam Navigation Co., 205 Fed. 857, 126 C. C. A. 321; Galpin v. Page, 18 Wall. (U. S.) 350, 21 L. Ed. 959; Furgeson v. Jones, 17 Oreg. 204, 20 Pac. 842, 3 L. R. A. 620, 11 Am. St. Rep. 808; Reeves v. Conger, 103 Ark. 446, 147 S. W. 438; Kelsey v. Carroll, (Wyo.) 138 Pac. 867.

The act imposes on district courts the duty of appointing the drainage district officers, and is unconstitutional. Beasley v. Ridout, 94 Md. 641, 52 Atl. 61; State v. Brill, 100 Minn. 499, 111 N. W. 294, 639; State v. Neble,

82 Neb. 267, 117 N. W. 723; In re County Commissioners, 22 Okla. 435, 98 Pac. 557; Schwarz v. Town of Dover, 68 N. J. L. 576, 53 Atl. 214; State v. Barker, 116 Iowa, 96, 89 N. W. 204, 57 L. R. A. 244, 93 Am. St. Rep. 222; Prince George's County Commissioners v. Mitchell, 97 Md. 330, 55 Atl. 673; People v. Dickerson, 164 Mich. 148, 129 N. W. 199; State v. District Court, (Mont.) 145 Pac. 721.

Acts necessary to confer jurisdiction must affirmatively appear on the face of the record.

Galpin v. Page, 18 Wall. (U. S.) 350, 21 L. Ed. 959; Furgeson v. Jones, 17 Oreg. 204, 20 Pac. 842, 3 L. R. A. 620, 11 Am. St. Rep. 808; Reeves v. Conger, 103 Ark. 446, 147 S. W. 438; Kelsey v. Carroll, (Wyo), 138 Pac. 867.

REID & HERVEY and GEORGE S. DOWNER of Roswell. for appellees.

The subjects embraced within the act are germane, one to the other, and are properly included in the same bill.

Sections 115 and 156, vol. 1, (2d ed.) Lewis Sutherland Statutory Construction; Weed v. Goodwin, 78 Pac. 371; Pioneer Irrig. District v. Bradley, 8 Idaho, 310, 68 Pac. 295, 101 Am. St. Rep. 201; Nampa & M. Irr. District v. Brose, 83 Pac. 500 (Idaho); Milne v. McKinnon et al., 144 N. W. 117 (S. D.); State v. Powers, 137 S. W. 1110 (Tenn.); Borden v. Trespalacios, etc., Irr. Co., 96 Tex. 494, 86 S. W. 11, 107 Am. St. Rep. 640.

Where it is possible to determine one part of act is void and other part is valid, the whole act is not to be declared void.

Sections 144 and 296, vol. 1 (2d ed.) Lewis Sutherland Statutory Construction; State v. Lancaster, 17 Neb. 87.

Where statute may constitutionally operate on certain persons, etc., it is not to be held unconstitutional because there may be persons to whom it cannot constitutionally apply.

In re Dexter-Greenfield Drainage District, 21 N. M. 286.

Sec. 298, vol. 1 (2d ed.) Lewis Sutherland Statutory Construction; Northrey v. Hoyt, 31 Or. 524, 49 Pac. 754; Duke v. O'Brien, 39 S. W. 444, 100 Ky. 710, 19 Ky. Law Rep. 81; Mannister & N. E. R. Co. v. Commissioners of Railroads, 76 N. W. 633, 118 Mich. 348; Bohner v. Haffen, 55 N. E. 1047, 161 N. Y. 390; State v. Courtney, 71 Pac. 308, 27 Mont. 378; Hickman v. State, 44 A. 1099, 63 N. J. Law, 666; State v. Beddo, 63 Pac. 96, 22 Utah, 432; See generally Decennial Digest, topic "Statutes," secs. 64(5) and 64(10).

Drainage districts, as contemplated by our statutes, are not properly municipal corporations.

Barton v. Minnie Creek Drainage Dist., 112 Ill. App. 640; People v. Heppler, 88 N. E. 491; People v. Niebrugge, 91 N. E. 115; Rood v. Claypool D. & L. Dist., 120 Fed. 207; State ex rel. Compton v. Drainage Dist., 90 S. W. 722; Wilson v. Drainage Dist., 165 S. W. 734; Drainage Dist. v. Richardson County, 125 N. W. 796; Newby v. Bd. of Drainage Commissioners, 79 S. E. 266; Ferbrache v. Drainage District, 128 Pac. 553; People v. Rec. Dist., 53 Cal. 346; Parker v. Harris Co. Drainage Dist., 148 S. W. 351; Metcalf v. Merritt, 111 Pac. 505, 14 Cal. App. 244.

A statute which delegates to the judiciary the power to determine upon petition whether a state of facts exists which brings petitioners within provisions of statute as to conditions precedent to organization or change in boundaries of a municipality is not unconstitutional.

Lewis v. Town of Brandenburg, 47 S. W. 862; Incorporated Town of Fairview v. Giffie, 76 N. E. 860; In re Fulhner, 92 Pac. 768; Nash v. Fries, 108 N. W. 210.

In State v. Barker, 116 Iowa, 96, 89 N. W. 204, cited by appellants, it plainly appears that the New Mexico act and the power conferred upon the court for appointment comes within the meaning of the rule that if general power be judicial, or if act be in aid of some judicial function, it is not violative of constitution.

As to distinction between a tax and a special assessment, see:

State v. Furstenau, 129 N. W. 83; Cooley on Taxation, p. 1153; Board of Improvement of Paving District No. 5 v. Sisters of Mercy, 109 S. W. 1165 to 1167, 86 Ark. 109; Farnham v. City of Lincoln, 106 N. W. 666 to 668, 75 Neb. 502; Town of Macon v. Patty, 57 Miss. 378, 34 Am. Rep. 451; Holly v. Orange County et al., 39 Pac. 790; Arnold v. Knoxville, 90 S. W. 469, 3 L. R. A. (N. S.) 837; Huston v. Clark, 112 Ill. 344; Des Moines & M. Levee District No. 1 v. Chicago B. & Q. R. Co., 145 S. W. 35, 39 L. R. A. (N. S.) 543; Billings Sugar Co. v. Fish, 40 Mont. 256, 106 Pac. 565, 26 L. R. A. (N. S.) 973.

The act in question does not violate sec. 1 of art. 3 of the State Constitution.

Sunderlin v. Luken, 68, S. E. 225; O'Neill v. Yellowstone Irrigation District, 121 Pac. 283, 44 Mont. 492; Scott v. Marley, 137 S. W. 492; State v. Superior Court of Skagit Co., 85 Pac. 265; State v. Crosley, 99 N. W. 636; Spencer v. District Judge, 56 N. W. 1006; City of Seattle v. Seattle & M. R. Co., 96 Pac. 958, 50 Wash. 132; State v. Ensign, 56 N. W. 1006, 55 Minn. 278; Huston v. Clark, 111 Ill. 344, note in 60 L. R. A. 170.

Where the jurisdiction of a court is dependent upon the judicial determination of a question of fact, and upon proper notice to all parties, a hearing is had and such fact determined, and an appeal from such determination is granted by the statute. Unless a party appeals within the time allowed, the determination of the question of fact is res adjudicata and cannot be attacked collaterally or at a later stage of the proceedings for the purpose of showing lack of jurisdiction.

Van Fleet's Collateral Attack, par. 62; Seibert v. Lovell, 92 Iowa, 507, 61 N. W. 197; Reclamation District v. Burger, 55 Pac. 156; O'Neill v. Yellowstone Irrigation District, 121 Pac. 283; Miller v. Perris Irrigation Co., 85 Fed. 693; State ex rel. Frazer v. Holt County Court, 37 S. W. 521, 135 Mo. 533.

In re ·Dexter-Greenfield Drainage District;· 21 N. M. 286.

## OPINION OF THE COURT.

PARKER, J.—This is an appeal from an order of the district court of the Fifth judicial district within and for the county of Chaves, overruling the remonstrance of the appellant, Jacquez Michelet, to the report of the commissioners of the Dexter-Greenfield drainage district upon assessments for benefts, damages, and costs of construction in said district theretofore filed in said court. ·

There are five assignments of error, all of which seem to ·be relied on by the appellant, attacking ·the constitutionality of what is known as the drainage law of New Mexico, being chapter 84 of the Laws of the Legislative Assembly approved June 14, 1912, set forth in Code 1915 as sections 1877 to 1958, inclusive, and also the refusal of the ·court to allow the appellant to submit evidence tending to prove that the original and amended petitions filed in said court, initiating the proceeding for the establishment of the drainage district, were not signed by a majority of the adult owners of lands within the proposed district, nor by adult owners representing one-third in area of the lands situated therein. We will consider these assignments of error in the order in which they appear in the assignments of error on file in this cause.

[1] It is insisted that the drainage act is unconstitutional and void, in that it contravenes section 16 of article 4 of the Constitution by embracing within itself two separate and distinct subjects. This section provides that the subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed, except general appropriation bills, and for the codification and revision of the laws. This assignment of error proceeds upon the theory that section 82, providing that any persons, firm, corporation, or association may exercise the right of eminent domain, and can take and acquire land and right of way for the construction, operation, and maintenance of a drainage ditch in the manner provided by law for the condemnation and taking of property in the state of New Mexico for railroad, telegraph, and other public purposes, is a separate and distinct subject from

the remainder of the act, to-wit, the organization and operation of drainage districts, and conferring additional powers on certain officers, and providing for the issuing of bonds, and levying assessments on lands benefited, etc., as set forth in the title of the drainage act. It is argued by the appellant that this section is an unrestricted grant of the right of eminent domain, without regard to its connection with any drainage district as provided for in the preceding sections of the act, and that it may be extended to cases not only for private drains, but to drains for other than agricultural purposes, as restricted by the general provisions of the drainage act. We do not deem it necessary to discuss one of the answers which the appellee makes to this proposition, to-wit, that, although an act may include two distinct subjects, the whole act shall not be declared void if it is possible from an inspection of the act itself to determine which part of the act is void, and which is valid, because in our opinion section 82, when construed in the light of the remaining provisions of the act, does not embrace a different or distinct subject from such provisions. If this were a proceeding to review a judgment granting the right of condemnation to a private drain, or to a drain for other than agricultural purposes, there might be some force to the appellant's contention; but our opinion is that this section, in view of section 79 of the drainage act, which contains a direct reference to secton 82, was intended by the Legislature to confer this power, not upon private drainage systems or for purposes other than agriculture, but upon the individual owners of lands embraced within a drainage district, as provided for in the drainage act. Section 79 of the drainage law provides, in substance, that the owner of any land that has been assessed for drainage, as provided in the drainage act, shall have a right to use the drain as an outlet for lateral drains, and that if his land is separated from such drain by the land of others, and he is unable to agree upon the terms upon which he may construct his lateral across such land, he may acquire a right of way by condemnation as provided by section 82. When the act is so construed,

it constitutes an important and vital part of the general plan of drainage, as outlined by the Legislature, and does not constitute a separate and distinct subject. We understand the rule to be that, in cases of this kind, that construction will be adopted which would sustain the constitutionality of the law, and confine the operations of the objectionable section to the general scope of the act. Lewis' Sutherland on Stat. Cons., vol. 1 (New Ed.) § 298; Northup v. Hoyt, 31 Or. 524, 49 Pac. 754; Duke v. O'Bryan, 100 Ky. 710, 39 S. W. 444.

[2] The appellant's principal contention is based upon his second assignment of error, which is that the drainage law contravenes section 1 of article 3 of the state Constitution, by charging the district courts and the judges thereof with the exercise of powers properly belonging to the legislative and executive departments of the state government.

This section is the usual constitutional provision that no person, or collection of persons, charged with the exercise of powers properly belonging to one of the three departments of government, shall exercise any power properly belonging to either of the others, except as otherwise expressly directed in the Constitution.

The argument of appellant is that this law requires the district court to organize drainage districts, to appoint commissioners and remove them, and appoint their successors, fix their compensation, and make and confirm assessments against lands included in the drainage districts, which the appellant contends are executive or ministerial duties. The principal case cited by appellant is Tyson v. Washington Co., 78 Neb. 211, 110 N. W. 634, 12 L. R. A. (N. S.) 350, wherein the court denied the power of the Legislature to provide a right of appeal from the action of the board of county commissioners in establishing a drainage district, upon the ground that the same was not conducive to the general convenience and public welfare. A reference to this case will reveal the fact that the drainage act referred to was an act in which a Legislature had committed the general procedure of organizing a drainage

district to the board of county commissioners, and the court held that, inasmuch as the Legislature had seen fit to confer this power upon the board of county commissioners, it became a ministerial duty and not a judicial one, and the right of appeal, standing separate and alone in such legislation, would be contrary to the constitutional provision which was in substance the same as our own. Our opinion is, however, that this was a different situation from that presented to the court in the case at bar. The drainage law of New Mexico provides for a judicial proceeding from start to finish. It provides generally for filing in the district court a petition, and sets forth what the petition shall contain, the requisite number of signers, and the number of acres which must be represented. It provides for a judicial hearing after due and proper notice, upon the question of the sufficiency of the petition, the constitutionality of the law, and the jurisdiction of the court, and if the petition is found sufficient the court appoints three commissioners to make a preliminary investigation and report, and upon this report the court declares the district established, and orders the commissioners to cause a survey to be made to establish assessments to meet the cost of construction and make a report thereon, and upon the filing of this report, and the giving of notice as provided by the statute, the court considers the report of the commissioners as provided by the act, and particularly the question as to whether the benefits exceed the cost, and, after disposing of any remonstrances that may be filed, makes its order in the form of an ordinary decree, confirming or rejecting the report.

The statute under consideration is almost a direct copy of the Wisconsin drainage law, and the Supreme Court of that state, in the case of Stone v. Little Yellow Drainage District, 118 Wis. 388, 95 N. W. 405, after giving a general summary of the act as above mentioned, held:

"That such order or decree is the culmination of an entirely judicial proceedings we cannot doubt, nor that, as a corollary thereof, it may be enforced by the court rendering it by any or all of those processes inherent in courts of justice.

In re Dexter-Greenfield Drainage District, 21 N. M. 286.

The view that this proceeding is a judicial one has the support of intimations at least from this court and from the courts of Illinois, whence, in very large measure, the statutes were adopted."

The distinction between the case at bar and the case of Tyson v. Washington County, as above set forth, is further shown by a later decision of the Supreme Court of Nebraska, in which the court considered the constitutionality of the later drainage law (Laws 1905, c. 161; Rev. Stat. Neb. 1913, § 1797 et seq.), providing for the organization of drainage districts through the courts, and held that the law was not in contravention of the Constitution of that state in attempting to confer upon the district courts powers and duties not judicial in their character. Barns et al. v. Minor et al., 80 Neb. 189, 114 N. W. 146. The court distinguished the latter case from the case of Tyson v. Washington County, by stating that the act under consideration in the last-mentioned case had committed the matter of the organization of drainage districts to the board of county commissioners, stating:

"The case at bar, however, presents such facts and conditions relating to the sufficiency of the procedure, and the character and quantity of the lands sought to be affected thereby, as may, and is likely to, be drawn in question and give rise to a judicial inquiry as to their existence. So it was enacted that such inquiry shall be had as a preliminary step to the organization of the corporation and the existence of its corporate powers.

"Manifestly, as it seems to us, the court in such a proceeding is called upon to exert no other than its ordinary judicial functions. The statute prescribes that, if certain steps have been taken and certain facts exist, a governmental corporation shall be deemed to have been created, not otherwise, and the court by the exercise of its usual powers and by the observance of judicial methods ascertains and determines that such steps have or have not been taken, or that such facts do or do not exist, and from these premises draws an inference or reaches a conclusion which it pronounces in a form of a judicial order or judgment in like manner and in like effect as in ordinary cases."

The appellant makes the point that under the drainage law these districts are corporations, and the act provides, therefore, for the organization of corporations by an order of the district court, and that, whether such corpora-

tions are municipal or private corporations, the Legislature is without authority to confer upon the courts the power to organize corporations. We do not think there is any merit in this contention. The court does not organize the corporation, as stated in the cases of Barns v. Minor and Stone v. Little Yellow Drainage District, supra. The Legislature provides for the organization thereof and defines the procedure therefor. The court makes a judicial determination as to whether the requirements of the statute have been complied with, and applies the law thereto as required by the statute. Bisemus v. City of Randolph, 82 Neb. 520, 118 N. W. 127; Wickham v. City of Alexandria, 23 S. D. 556, 122 N. W. 597; Town of Edgewater v. Liebhardt, 32 Colo. 307, 76 Pac. 366; Young v. Salt Lake City, 24 Utah, 321, 67 Pac. 1066; City of Winfield v. Lynn, 57 Pac. 549; Eskridge v. City of Emporia, 63 Kan. 368, 65 Pac. 694.

It is further contended that this act confers upon the district courts duties and powers not judicial, in that they are required to appoint the drainage commissioners and fix their compensation, and that these commissioners are, and are expressly declared by the act to be, public officers. Our Constitution (article 5, § 5) provides that the Governor shall nominate, and by and with the consent of the Senate appoint, all officers whose appointment or election is not otherwise provided for. It is a serious question whether or not the power to appoint to office or to fill vacancies is inherently an executive function, and belongs exclusively to that department of the government; but we do not find it necessary here to determine that question. Our opinion is that, having determined that this act provides for the organization of drainage districts as a judicial proceeding entirely, the power to appoint commissioners is just as much an incident to the exercise of the court's jurisdiction in the entire proceeding, as would be the appointment of a receiver to take charge of property involved in litigation. A constitutional provision similar to the one above mentioned was held in People v. Morgan, 90 Ill. 558, involving the appointment of a park

commissioner, to confer upon the Governor the appointment of all officers whose appointment had not been provided for in the Constitution, or by the rightful exercise of legislative power, and not to confer upon the Governor in all cases the exclusive power to appoint to office.

A great many cases are cited and relied upon by the appellant, which deny the power of the court to appoint to office; but, without considering the question as to whether these cases constitute the weight of authority upon the inherent right and exclusive power of the executive to appoint to office, the cases do not touch the question now under consideration. They are cases involving the appointment of a supervisory committee for a county jail, a board of administration for a municipal hospital, park commissioners, excise commissioners, water works trustees. custodian of the court grounds, and expert witnesses. This class of cases is clearly distinguishable from the case at bar, and from a great many cases sustaining the right and power of the court to appoint to office if the matter is incidental to the exercise of judicial power. Undoubtedly in the case at bar the appointment of drainage commissioners, and the fixing of their compensation, and the filling of vacancies, is incidental and absolutely necessary to the exercise of the general powers conferred upon the court to organize and establish these drainage districts.

The Supreme Court of Wisconsin has also considered the question of the power of the courts to appoint to office, in the case of In re Appointment of Revisor, 141 Wis. 692, 124 N. W. 670. In this case, referring to the organization of drainage districts, the Supreme Court said:

"The various laws, * * * authorizing circuit courts and judges to organize drainage districts on petition and appoint drainage commissioners to carry out extensive systems of drainage of swamp lands by levying special assessments, have been sustained by this court against vigorous and able attacks, although the exact point now under consideration seems not to have been discussed. * * * The general law, however, authorizing the formation of such districts, and the appointment of commissioners in the same way * * * was vigorously attacked in the case of Stone v. Drainage District, 118 Wis. 388 [95 N. W. 405], as not a judicial proceeding, and

after full argument the validity of the statute was sustained. Under this general law it is to be noted that the drainage commissioners appointed by the court or judge are required to take the constitutional oath of office and give a bond, and that they have a definite term which is called their term of office. * * * In view of these decisions, it must be conceded, I think, in considering what duties may properly be delegated to courts, that this court has already taken a view which would seem to entirely justify the conclusion, without further examination, that the power to appoint a revisor and his assistants is one which may properly be conferred on the judiciary."

It is also contended that this act is obnoxious to the constitution in the particulars above mentioned, because it imposes upon the district courts the duty of approving and confirming assessments to be made upon the lands reported to be benefited by the work to be done in the drainage district. Appellant argues that this confers upon the court the power of taxation, and this power cannot be so conferred. The cases referred to in the appellant's brief upon this point are cases involving the collection of taxes, as distinguished from assessments for benefits, as provided in this act. There is a distinction in the authorities between a tax and a special assessment, when involved in the question of the constitutional power to levy and collect the same. As is stated in Cooley on Taxation, vol. 2, p. 1153:

"The general levy of taxes is understood to exact contributions in return for the general benefits of government. * * * Special assessments, on the other hand, are made upon the assumption that a portion of the community is to be specially and peculiarly benefited, in the enhancement of the value of the property peculiarly situated as regards a contemplated expenditure of public funds."

This question has been before the Supreme Court of Wisconsin several times. It seems that the organization of drainage districts, and the assessment of shares by judicial proceedings, has been considered more in this state than any other state, and it probably was the first state to put forth this idea in the organization of such corporations and the construction of such works. In the case of Bryant et al. v. Robbins et al., 70 Wis. 258, 35 N. W. 545,

the court thoroughly considered the very objection which the appellant has raised, and said:

"It cannot fairly be claimed in this case that the court directly exercises the power of taxation. It is true it may initiate a proceeding which will result in local charges or assessments upon land; but this it does in many cases, as where it sustains street improvements or works for the improvement of harbors and public waters. * * * It may be conceded that the laying of taxes is properly the exercise of a legislative, as distinguished from a judicial, function. Still it is obvious that, whenever the court sustains a law authorizing a work the expense of which is charged against property specially benefited, it exercises the same power or function which the court does in authorizing the drainage proceeding under the law in question. * * * In the present case, the commissioners make the assessment upon the land specially benefited by the drainage, and to the extent of such benefits. We can perceive no valid objection to the agency by which the assessments are made, or to the principle upon which they are laid."

See, also, the following authorities: Kilgour v. Drainage Com'rs, 111 Ill. 342; Board of Improvement of Paving District No. 5 v. Sisters of Mercy, 86 Ark. 109, 109 S. W. 1165; Farnham v. City of Lincoln, 75 Neb. 502, 106 N. W. 666; Town of Macon v. Patty, 57 Miss. 378, 34 Am. Rep. 451; Holly v. Orange County et al., 39 Pac. 790; Arnold v. Knoxville, 90 S. W. 469; Huston v. Clark, 112 Ill. 344; Des Moines & M. Levee District v. C., B. &, Q. R., 240 Mo. 614, 145 S. W. 35, 39 L. R. A. (N. S.) 543; Billings Sugar Co. v. Fish, 40 Mont. 256, 106 Pac. 565, 26 L. R. A. (N. S.) 973, 20 Ann. Cas. 264.

In considering generally the constitutionality of this law with respect to all the points urged by the appellant in his second assignment of error, we think it important to consider, in this connection, our own constitutional provision relative to providing for the drainage of lands, and the decisions of the Supreme Court of Illinois considering a similar provision. Section 4 of article 16 of our state Constitution provides that the Legislature is authorized to provide by law for the organization and operation of drainage districts and systems. By the amendment of 1878, the state of Illinois adopted a similar provision in its Constitution, and this constitutional provision has been

construed many times by the Supreme Court of that state. In the case of Kilgour v. Drainage Com'rs, 111 Ill. 342, in which the opinion was rendered as early as 1884, the court said:

"Under the amendment of the Constitution (section 31, art. 4) adopted in November, 1878, the Legislature is expressly empowered 'to provide for the organization of drainage districts, and vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches,' etc. This general grant of power, being unrestricted in terms, carries with it, by necessary implication, all other powers necessary to make the general grant effective, and to accomplish the results intended. As to the mode in which this power is to be exercised, the Legislature is left the sole judge."

In the case of v. Blake v. Caldwell, 109 Ill. 504, the Supreme Court of Illinois thoroughly considered the additional amendment, as well as the general provisions of the drainage law of that state. In the course of its opinion, the court observed:

"The contention is that the act is in contravention of the Constitution in two respects: First, in that it embraces more than one subject, and is therefore within the prohibition of section 13, art. 4; and, second, in that it authorizes the county court, and not the owners of lands, to create the corporation. * * * We are unable to discover here (in the constitutional amendment), any limitation or restriction upon the General Assembly as to the agencies to be used in the creation of the corporation. Surely there can be no reason why the county court may not be invested with power to inquire into and find the existence of certain preliminary facts deemed important as prerequisites to the corporation. This is not unusual, but in all like cases, where the facts deemed necessary to be found are of a nature that the General Assembly cannot conveniently investigate them, the practice has been to refer their determination to some local tribunal. * * * It is the statute that creates the corporation, not the county court; but the statute only becomes operative when the prescribed facts are found, and the finding is entered of record by the county court, as directed by the act."

See, also, Huston v. Clark, supra, and People v. Drainage Commissioners, 143 Ill. 417.

In fact, it might be here observed that a drainage law very similar to our own has been before the Supreme Courts of Illinois and Wisconsin a number of times upon various questions involving its constitutionality, and this

legislation has invariably been sustained.   The cases from
the state of Illinois will all be found by a reference to the
foregoing citations, and in the state of Wisconsin by refer-
ence to the case of Stone v. Little Yellow Drainage Dis-
trict, above cited.   See generally upon this proposition the
following authorities:   Sanderlin v. Luken, 152 N. C.
738, 68 S. E. 225; O'Neill v. Yellowstone Irrigation Dis-
trict, 44 Mont. 492, 121 Pac. 283; Scott v. Marley, 124
Tenn. 388, 137 S. W. 492; State v. Superior Court, 42
Wash. 491, 85 Pac. 636; Spencer v. District Judge, 55
Minn. 278, 56 N. W. 1006; City of Seattle v. Seattle Ry.
Co., 50 Wash. 132, 96 Pac. 958; State v. Ensign, 55 Minn.
278, 56 N. W. 1006.

Our opinion therefore is that the New Mexico drainage
act is not in violation of any of the provisions of our state
Constitution set forth by the appellant under his second
assignment of error.

[3]   The appellant urges that said chapter 84, Laws
of 1912, violates the provision of section 6 of article 11
of the Constitution, which provides that all domestic cor-
porations shall be organized by and through the Corpora-
tion Commission.   We do not think there is any merit in
this contention.   The court, in the first place, does not
organize the corporation, but merely sits in judgment as
a judicial tribunal to ascertain that certain required facts
and conditions exist.   The statute thereupon organizes
the corporation.   See specifically on this point section 36
of the act, section 1912, Code 1915.   See, also, in this
same connection, the cases of Barns v. Minor and Stone
v. Little Yellow Drainage District, supra.

A more conclusive reason for denying the appellant's
proposition arises out of the very terms of the section of
the Constitution, supra.   The grant of power and juris-
diction to the State Corporation Commission as to the
organization of corporations is limited to domestic cor-
porations.   We do not understand the words "domestic
corporations," as used in the section, to include all cor-
porations which are local in character, that is to say, cor-
porations organized under the laws of the state.   At the

time of the adoption of this section of the Constitution, we had in the state various other kinds of corporations, which were domestic in the sense that they were organized under the law of the state, but which were evidently not intended by the Constitution makers to be included within the jurisdiction of the State Corporation Commission. For instance, at that time we had a provision for the organization of irrigation districts as provided by chapter 140, Laws 1909, and chapter 109, Laws 1909, section 2949 et seq., Code 1915. We also had community ditches or acequias which were declared by section 5744, Code 1915, to be corporations or bodies corporate with power to sue or to be sued as such. These two corporations were as much domestic corporations as are drainage districts organized under the provisions of chapter 84, Laws of 1912, supra. All three of these classes of corporations are organized for the purpose of exercising a public function, and are not organized for private gain. It would hardly be contended, we think, that community acequias, or irrigation districts, must necessarily be organized under the supervision of the State Corporation Commission, because the nature of their powers, and the methods prescribed by law for such organizations, are incompatible with the exercise of jurisdiction by the State Corporation Commission. That commission is given power to issue charters for domestic corporations, and amendments or extensions thereof. Neither of these corporations have any charter, require none; but the statute itself, by force of its own terms, declares that when certain facts exist a corporation shall be deemed to have been created. Just so with drainage districts. A drainage district has no charter, requires none; but the statute organizes it upon the finding and determination by the district court that certain facts exist. It seems clear therefore that the power and jurisdiction committed to the State Corporation Commission to issue charters to domestic corporations must have been intended to include only such domestic corporations as require, under the law, the issuance to them of charters, and does not include corpora-

tions of the class under consideration. It is to be further noticed that the further provision in section 6 of article 11 of the Constitution, as follows: "And through which shall be carried out all of the provisions of this Constitution relating to corporations, and the laws made in pursuance thereof"—has no controlling influence. The Constitution of the state, except in section 4 of article 16, to be hereafter noticed, makes no reference to corporations of this kind.

Section 4 of article 16 of the Constitution is as follows:

"The Legislature is authorized to provide by law for the organization and operation of drainage districts and systems."

It is to be observed that this provision of the Constitution does not contemplate, necessarily, that drainage districts shall be corporations. The grant to the Legislature under this section would seem to be plenary, and to authorize it to provide for drainage districts, in such form as it in its discretion may adopt. The secton cannot be said to relate to corporations within the meaning of the clause of section 6, art. 11, of the Constitution, supra. Similar provisions to those in section 4 of article 16 have been before the courts of Illinois. See Kilgour v. Drainage Com'rs, 111 Ill. 342, and Blake v. Caldwell, 109 Ill. 504, quotations from which have been heretofore inserted.

[4] It is again objected, upon the part of the appellant, that this act violates section 20 of article 2 of the Constitution, because it provides for the taking and damaging of private property without providing any definite or certain fund out of which compensation shall be paid for the property so taken and damaged. Appellant cites authorities to sustain the contention that, under constitutional provisions providing that private property shall not be taken for public use without just compensation, there must be a certain and definite fund out of which the compensation therefor is to be paid. Conn. River R. Co. v. Franklin Co. Com'rs, 127 Mass. 50, 34 Am. Rep. 338; Tuttle v. Knox Co., 89 Tenn. 157, 14 S. W. 486; Godfrey v. District Court, 44 Minn. 299, 46 N. W. 355.

In re Dexter-Greenfield Drainage District, 21 N. M. 286.

There are several sections in the drainage law providing for the condemnation of lands covering condemnation for laterals, for outlets, and for railroad rights of way, etc. See sections 57 and 58. Section 39 provides, in connection with the report of the commissioners as to the estimated total cost of the proposed work, that such estimate shall include the total amount of all probable damage to land within and for the district, and section 64 extends to the commissioners the power to borrow money by means of notes, bonds, etc., for the purpose of paying for the construction or repair of any work or any indebtedness that may lawfully be incurred. Section 68 is as follows:

"The damages allowed to the owners of lands shall be paid or tendered before the commissioners shall be authorized, to enter upon such lands, for the construction of any drains or ditches proposed thereon. * * *"

It will be observed from the foregoing that no fund is necessary to be designated out of which this compensation is to be paid, in view of the fact that it must be paid before the land can be taken; but, even if it were necessary to designate such fund, we think the act sufficiently designates the fund, to-wit, the amount raised by assessments upon the lands, followed by the sale of its bonds or notes.

In the case of Conn. River R. Co. v. Franklin Co., supra, the statute failed to provide for the payment before entry of the damages, and the only security provided for, for payment after entry, was the earnings of a railroad owned by the state. In the case of Tuttle v. Knox Co., supra, the statute nowhere provided either for the payment of damages, for the assessment of the amount of damages, for the means of collecting damages. or by whom they should be paid. In the case of Godfrey v. District Court, supra, the statute failed to provide that the city was primarily liable for the compensation awarded for land taken for public parks. It will be seen that these cases do not cover provisions similar to those in our drainage act. We think that the act provides within the provisions of the Constitution for just compensation for such property as may be taken or damaged in the construction of the drainage system.

In re Dexter-Greenfield Drainage District, 21 N. M. 286.

'[5]  The last assignment of error relied on by the appellant is the action of the court in refusing the tender of proof offered by the appellant to meet the allegations set forth in paragraph 2 of his remonstrance. This allegation is:

"That this court has never acquired, and does not now possess, any jurisdiction whatever of the subject-matter of this proceeding, nor of the property included in said so-called drainage district, nor of the persons who own said property for the reason that neither the original petition herein filed on the 30th day of November, 1912, nor the amended petition herein filed on the 6th day of March, 1913, was signed by a majority of the adult owners of lands within the proposed district described and referred to in said proceedings, nor by adult owners representing one-third in area of the lands within said proposed drainage district to be reclaimed, benefited, or otherwise affected by the work proposed to be done therein."

The question now is:  Did the court err in refusing the tender of proof offered by the appellant to sustain this allegation?

It is the contention of the appellees that the court did not err in sustaining the objection of the commissioners to this tender of proof for the reason that the remonstrance was filed and the proof was offered, not at the hearing provided by the statute for the organization of the district, but at the hearing held long afterwards, provided by law for the hearing upon the report of the commissioners upon assessments for benefits and damages, and that therefore the same constituted a collateral attack upon the organization of the district, and was not admissible. A solution of this question will require a brief outline of the provisions of the drainage law.

The act provides, as heretofore stated, for the filing in the district court of a petition, asking the organization of a drainage district, and describing its boundaries, which petition must be signed by at least a majority of the adult owners of lands within any district, who shall represent one-third in area of the lands within said district, and that upon the filing of such petition the court shall enter an order fixing a time and place when and where such

petition will come on for hearing, and provides for the manner of giving notice to all the owners of lands within the district of such hearing. Section 11 provides:

"On the day fixed for hearing on such petition all parties owning lands, or any interests or easements in land, within said proposed district, or who would be affected thereby, may appear and contest: (1) The sufficiency of the petition. (2) The sufficiency of the signers of the petition. (3) The sufficiency of the notice. (4) The constitutionality of the law, and (5) The jurisdiction of the court. * * *"

The act also provides that at this hearing the court shall hear and determine whether or not the petition contains the signatures of a majority of the adult owners of lands within said proposed district, who represent one-third in area of the lands proposed to be affected by the work. If the court finds in the affirmative upon these facts, and in favor of the constitutionality of the law and the jurisdiction of the court, it is required to appoint three commissioners who shall forthwith organize and make a further preliminary report to the court, and, upon such report being filed, notice shall be given of another hearing thereon. In this report the commissioners are required to state: (1) Whether the proposed work is necessary, or would be of utility in carrying out the purposes of the petition. (2) Whether the proposed work would promote agricultural interests, and whether there are any lands described in said petition which would not be benefited by said improvement. (3) Whether the total benefits will exceed the cost. And (4) they shall also fix, as near as may be, the boundaries of said proposed district. Upon this hearing the court shall make and enter its findings upon the matters set forth in the report as above mentioned. It is provided that at either of these hearings any interested party may appear and remonstrate.

Section 34 provides that if the preliminary report be that the benefits of the proposed work will exceed the damage and cost of construction, and that the agricultural interests will be promoted, and no remonstrance is filed, or if, on the trial of the issues made on said report, the court finds that the benefits will exceed the damages and

In re Dexter-Greenfield Drainage District, 21 N. M. 286.

cost of construction, the court shall make and file such findings in writing, and make an order confirming said report.

Section 35 provides:

"Such findings and order shall be final and conclusive unless appealed from to the Supreme Court within thirty days after filing thereof."

Section 36 provides that, after the filing of said order, such drainage district shall be, and is thereby declared to be, organized as a drainage district by the name mentioned in the petition, and with the boundaries fixed in the order affirming the report, and shall be a body corporate, etc.; and section 37 provides that the commissioners shall immediately employ a competent drainage engineer and proceed to have all necessary levels taken and surveys made, and lay out the proposed work and make a map thereof, and plans, profiles, and other specifications, and report in writing to the court the starting point, routes, and termination of the proposed work, the boundaries as finally established, what lands will be injured by the work; and shall award to each tract the amount of damages allowed, what lands will be benefited, and the total amount, as near as they can determine, that the proposed work will cost.

A hearing is also provided upon the last-mentioned report, and upon such hearing the court shall confirm the report of the commissioners or dismiss the same. If the court confirms it, it then enters an order in the nature of a final decree providing for the construction of the work upon the plan outlined in this report, and for the assessment of the costs thereof as provided by the statute.

The record in this case shows no remonstrance upon the part of the appellant at either of the first two hearings. It shows, furthermore, that he was one of the signers of the original petition herein, and that notice of the first hearing was duly served upon him, as provided by the act. After the filing of the petition in this manner, and the giving of notice as provided by law, a hearing was had in accordance with the statute, and the court, on March 8,

1913, entered its order herein sustaining the petition, and expressly finding, among other things, that the petition was signed by a majority of the adult land owners within the proposed district, and that the signers are adult owners of one-third or more of the lands lying therein. The record further shows that the commissioners made their preliminary report, and on June 23, 1913, after due and proper notice, a hearing was had thereon, and the court entered its order in all things confirming the report of the commissioners.

The above and foregoing review of the drainage law and of the proceedings of this case are sufficient to show that the appellant in this case undertook to raise the question of the sufficiency of the petition at a time long after the time provided for by the statute. The act provides a full and fair opportunity for all interested parties to appear and raise the very question which the appellant undertook to raise at another and later time. Undoubtedly, from a practical standpoint, it was the intention of the Legislature to have these questions determined before the expenditure of large sums of money in the making of the survey and preparation of the plans, profiles, and specifications, as provided in section 39 above referred to. We are of the opinion that the orders of the court entered in this proceeding, finding at the conclusion of the hearing provided by law for that purpose that the petition was sufficiently signed, as above indicated, were a final adjudication of that question, and that the same could not be attacked in any method whatever, except as provided by the statute, to-wit, by appealing from the order sustaining the petition within 30 days from the entry thereof, and that any other method of attack, whether in the same proceeding, or in any other proceeding, constitutes a collateral attack, and is unavailable.

The case of People v. Waite, 213 Ill. 423, 72 N. E. 1087, was a quo warranto proceeding to test the legality of the organization of a drainage district upon the ground that the record of the county court did not show that the petition upon which the county court acted at the time

the district was organized was signed by a majority of the adult land-owners of the district.  The court said:

"In the case at bar the petition provided by the statute was filed in the county court of Coles county, and the statutory notice to all persons interested was given.  That county court then had jurisdiction of the subject-matter and of the parties and was authorized to act.  If it erred in holding that the petition was signed by the requisite number of adult land-owners of the district or in refusing to permit persons who had signed the petition after the organization of the district to withdraw their names from the petition, the remedy of the parties in interest who deem themselves aggrieved by the decision of the court was to have the case reviewed upon appeal or by writ of error, and not by quo warranto proceeding.".

The case of O'Neill v. Yellowstone Irrigation District, heretofore cited in this opinion (44 Mont. 492, 121 Pac. 284), contains an adjudication of this question, involving the organization of an irrigation district under provisions very similar to our drainage law.  In dealing with the question of the right of a land-owner to attack the sufficiency of the petition, or any other matters of fact required to be raised at the first hearing, other than by appeal, after such hearing, the Supreme Court of Montana observed:

"It is now too late to question the validity of the proceedings either preliminary to the order of the court establishing the district, or those had for the purpose of authorizing the board of commissioners to issue bonds.  By section 4 the findings and order of the court establishing the district is made conclusive upon all the owners of lands included in it, and final, unless an appeal be taken therefrom to this court within sixty days after its entry."

This question was also considered by the federal court of the southern district of California, in the case of Miller v. Perris Irrigation District (C. C.) 85 Fed. 693, in which the court said:

"Among the issues upon which the court passes in confirmation proceedings are the very ones presented by complainant in his bill, namely, whether or not the requisite number of bona fide freeholders signed the petition to the board of supervisors and also whether or not due notice of such petition was given.  These issues the court must necessarily find

in the affirmative before any order of confirmation will be reached; and it will be seen that, in some of the cases above cited, these two questions were the identical questions passed upon by the court. If the final order or decree in a proceeding for confirmation were res adjudicata, there would be an estoppel by judgment against litigating again the issues so adjudicated. Considering, however, such a proceeding but one to secure evidence, as held in Tregea v. Board, supra, still, since, the evidence so secured, the final decree or order is conclusive, it must prevail whenever offered. In other words, the ultimate effect of an order of confirmation is the same, whether it operates as an estopped by judgment, or as conclusive evidence. It is decisive of the legality of the existence of the district."

See, also, People v. O'Hair, 29 Ill. App. 239; People v. Munroe, 227 Ill. 604, 81 N. E. 704.

The appellant urges that the position of the court below in sustaining the objection of the commissioners to this tender of proof, if the court had already made its findings relative to the sufficiency of the petition, and entered its order sustaining the petition, was nothing more nor less than an attempt to confer jurisdiction upon itself by ruling to that effect. The finding in favor of the sufficiency of the petition, and the order of the court based thereon, are simply the evidence of the existence of the facts conferring the jurisdiction. It is the law that confers the jurisdiction, and not the court, and public policy requires that where the jurisdiction of the court, as provided by statute, is based upon the ascertainment and determination of certain facts, and a full and fair opportunity is given to all parties interested to be heard thereon, and a right of appeal afforded final determination of those facts, constitutes res adjudicata and cannot be inquired into at any other time, or by any other method than that provided by the statute. If this were not true, and the practice adopted by the appellant in this case were allowed, parties could remain silent until vast amounts of money were expended in the construction of these drainage districts, and then come forth and raise these facts and cause a possible waste of this money, when they might just as well have raised it before the expenditure.

[6] Appellant argues in his brief that even if the court's original ruling as to jurisdiction was correct when made, and was conclusive as to the facts then found, that the court might have lost jurisdiction by subsequent changes. This view presents a question not necessary for us to consider, as this question was not raised in the court below, and no tender of proof was offered thereon. Undoubtedly the appellant had the right to prove, if he could, that the court had, since the entry of its order sustaining the petition, lost its jurisdiction by subsequent changes in the boundary; but no such offer was made.

From all the foregoing it follows that none of the assignments of error relied on by the appellant are, in our opinion, well taken, and cannot be sustained.

The judgment of the district court will be affirmed, and it is so ordered.

ROBERTS, C. J., concurs.

HANNA, J., being absent, did not participate in this decision.

### SYLLABUS BY THE COURT.

